## ROBINSON *against* LYMAN.

The indorsee of a negotiable promissory note, negotiated after due, is considered as receiving dishonoured paper, and takes it subject to every infirmity, equity and defence, to which it was liable in the hands of the payee.

*New-London,*
July, 1833.

Robinson
*v.*
Lyman.

But in order thus to affect the note in the hands of the indorsee, the infirmity, equity or defence relied on for that purpose, must have existed against and attached to the note itself, before the transfer, and not have arisen out of subsequent or collateral matters.

Therefore, where it was agreed between the original parties to a negotiable promissory note, while it was in the hands of the payee, that a sum then ascertained to be due from the payee to the maker, payable *in futuro,* should be applied on the note; and it was afterwards negotiated, when over-due; it was held, in an action by the indorsee against the maker, that such sum, being an equity which attached to the note itself, before its transfer, ought to be set off or applied on the note.

But where *A,* in *October,* 1827, gave a negotiable promissory note, payable thirty days after date; in *April,* 1828, or afterwards, *B* indorsed it to *C*; and in *October,* 1829, *A* was compelled, by legal process, to pay a debt to *D,* which *A* and *B,* in 1823, had contracted as partners, and which it was the duty of *B* to pay; also in *June,* 1829, *B* gave to *A,* a writing, stating therein a balance due from *B* to *A,* to be accounted for on said note; in an action brought on such note, by *C* as indorsee, against the maker, it was held, that neither the money so paid by *A* to *D,* for the benefit of *B,* nor the balance so stated as due from *B* to *A,* could be set off against the note in suit.

The indorsement, by the payee of a note, of a sum of money thereon, furnishes no presumption as to what time thereafter it was negotiated.

THIS was an action in favour of the indorsee of a promissory note against the maker. The note was for the sum of 955 dollars, 21 cents; was dated the 29th of *October,* 1827; and was payable to *John Moore,* or order, thirty days after date.

The cause was tried at *New-London, September* term, 1832, before *Bissell,* J.

The defendant, under a notice for that purpose, offered to set off against the claim of the plaintiff, as indorsee of the note, several demands, which he claimed to be due to him from *Moore,* the payee. The exact time of the transfer or indorsement of the note, by *Moore,* to the plaintiff, did not appear; but it appeared from a receipt on the back of the note, subscribed by *Moore,* that the sum of 142 dollars, 27 cents, was paid to him thereon, on the 10th of *April,* 1828; and the defendant claimed from this evidence, that the note was not negotiated until after that time. The plaintiff did not claim that it was negotiated before, but he insisted, that as the defendant had not offered any evidence to prove when the note was in fact indorsed to the plaintiff, the legal presumption was, that it was negotiated immediately after the payment made to *Moore;* and prayed the court so to instruct the jury. This the court did not do; but left it to the jury as a question of fact, to be deter-

mined by them, from the evidence before them, at what time the note was negotiated.

One of the claims offered to be set off, arose under the following circumstances. On the 18th of *July*, 1823, *Moore* and the defendant gave their note, signed *Moore & Lyman*, to *Patten & Russell*, for 182 dollars, 83 cents, payable on demand, with interest ; which note the defendant, on the 5th of *October* 1829, by legal process, was compelled to pay, amounting then, with interest and costs, to 256 dollars, 98 cents. The defendant claimed, that it was the equitable duty of *Moore* to pay the whole of this sum ; and that, although he, the defendant, had paid it after the note in suit had fallen due and had been negotiated, it was a proper matter of set-off against the note in the plaintiff's hands ; and to this effect he prayed the court to instruct the jury. The court did not so instruct the jury ; but observed to them, however, that it being admitted, that the note was negotiated after it became due, the indorsee took it subject to every legal defence, which existed in favour of the maker before and at the time it was indorsed.

The other claims offered to be set off, were two sums of 290 dollars, 58 cents, each, and one of 119 dollars, 50 cents. From evidence introduced by the defendant, and particularly an indenture between him and *Moore*, dated the 4th of *December*, 1827, it appeared, that on the 27th of *October*, 1827, the partnership of *Moore & Lyman*, (consisting of said *John Moore* and the defendant) was dissolved ; and it was thereupon agreed between them, that *Moore* should take the stock on hand, and account to the defendant for one half thereof, by equal instalments, in *June* 1828 and *June* 1829 ; that *Moore* should also have authority to collect all debts and demands in favour of the partnership, and it should be his duty to satisfy all demands against it, with the moneys arising from such collections ; and that the surplus, after extinguishing such demands and allowing a commission to *Moore*, should be equally divided between them ; that the note in suit was given, by the defendant, in pursuance of such agreement ; that the defendant paid to *Moore*, on the 25th of *June* 1828, 290 dollars, 58 cents, and on the 25th of *June* 1829, the same sum, in stock, on account of said note, for which *Moore* gave his receipts ; and that at the time of the latter payment, a schedule was appended to the receipt then given, wherein the balance due the

defendant, to be accounted for on said note, was stated to be 119 dollars, 50 cents. The defendant thereupon insisted, that as the defendant's share of the partnership stock (amounting to 581 dollars, 16 cents,) was agreed to be applied in part payment of said note, the sums specified in the receipts were, by the jury, to be so applied; and that the sum of 119 dollars, 50 cents, acknowledged to be due on the 25th of *June* 1829, ought to be set off against said note; and the defendant prayed the court so to instruct the jury. The plaintiff resisted these claims of the defendant. The court charged the jury, on this part of the case, that if they should find, that the value of the defendant's share in the partnership stock was ascertained, and that there was an agreement between the defendant and *Moore*, that the amount should be applied to said note, as claimed by the defendant; and that this arrangement was made while said note was in the hands of *Moore*, they ought to make the application of the two sums of 290 dollars, 58 cents, each, in part satisfaction of said note. As to the sum of 119 dollars, 50 cents, the court charged the jury, that if they should find, that the note was indorsed before the 25th of *June*, 1829, there being no evidence that this sum was due before that time, it could not be legally set off against the note.

The jury returned a verdict in favour of the plaintiff for the amount of the note, after applying the sum of 142 dollars, 27 cents, indorsed thereon, and the two sums of 290 dollars, 58 cents, each; and both parties moved for a new trial for a misdirection.

*Strong* and *W. P. Cleaveland*, jr., for the defendant, insisted, That the sum of 256 dollars, 98 cents, paid by the defendant to *Patten & Russell*, and the sum of 119 dollars, 50 cents, due from *Moore* to the defendant, on the 25th of *June*, 1829, should have been set off. They cited 2 *Phill. Ev.* 14. n. 3 *Kent's Comm.* 1 *Madd. Chan.* 435. (*New-York* ed. 1817.) *Thompson* v. *Hale*, 6 *Pick.* 259. 261. *Bay* v. *Coddington* & al. 5 *Johns. Ch. Rep.* 54. *The Boston Type and Stereotype Foundry Company* v. *Mortimer* & al. 7 *Pick.* 166. *Caines* v. *Brisban* & al. 13 *Johns. Rep.* 9.

*Law* and *W. F. Brainard*, contra, contended, That the claim of set-off made by the defendant, was wholly unfounded;

insisting, 1. That there can be no set-off but between *parties to the record.   Stat.* 434. *tit.* 2. *s.* 32.   *Johnson* v. *Bridge,* 6 *Cowen,* 693.   *Prior* v. *Jacocks,* 1 *Johns. Ca.* 169.

2. That there can be no set-off between partners, but of the balance due after a final settlement of the partnership accounts ; nor against a note of one partner given to another.   *Nevins* v. *Townsend,* 6 *Conn. Rep.* 5.   *Church* & al. v. *Knox* & al. 2 *Conn. Rep.* 514.   *Beach* v. *Hotchkiss,* 2 *Conn. Rep.* 425. *Brewster* & al. v. *Hammet* & al. 4 *Conn. Rep.* 540.

3. That the set-off claimed was on no ground of equity, or of infirmity in the note or defence against it.   *Sanford* v. *Mickles,* 4 *Johns. Rep.* 224.

CHURCH, J.   The principle is certainly well established, and not to be denied, that the indorsee of a negotiable promissory note, indorsed after due, is considered as receiving dishonoured paper, and takes it subject to all the infirmities and equities, and, some cases say, defences, to which it was liable in the hands of the payee.   But will the proper application of this principle justify the claim of the defendant, in the present case, is the question ?  2 *Stark. Ev.* 292.   *Chitty on Bills* 126. and cases referred to.   *Bishop* v. *Dexter,* 2 *Con. Rep.* 419.   *Nevins* v. *Townsend,* 6 *Con. Rep.* 5.   There was no infirmity, no illegality nor legal nor equitable defence existing against the note in question, while it remained in the hands of *Moore,* the payee, growing out of the existence of the note due to *Patten & Russell.*   There was no agreement between the original parties to the note before its transfer, that the defendants should pay to *Patten & Russell* their note, and have an application thereof upon the note in question.   Indeed, there was no connexion, either in fact or by agreement of parties, between the note in dispute and the debt due to *Patten & Russell.*   If payments had been made, either partially or in full ; if there had been a failure of, or a fraud in, the consideration of the note, or any illegality therein, or if there had been any agreement between the parties, affecting the note, before it was transferred to the plaintiff ; these, or other matters which might be suggested, would have created such infirmity, defence or equity, as would have attached to the note in the hands of the plaintiff.   But without some infirmity in the note itself ; or some matter which would

New-London,
July, 1833.

Robinson
v.
Lyman.

have constituted either an entire or partial defence to it ; or without some equity arising out of the note transaction, or attaching to the note ; the indorsee must be considered as holding it free from any claim of *mere set-off*, on the part of the defendant. This principle is recognized and established, by the court of *King's Bench*, in the late case of *Burrough* v. *Moss* & al. 10 *Barn. & Cres.* 558. (21 *Serg. & Lowb.* 128.) in which the court say : " The indorsee of an over-due bill or note is liable to such equities only as attach on the bill or note itself, and not to claims arising out of collateral matters." And *Bayley*, J., in the same case, says : " The cases have not yet gone the length of establishing, that such a set-off not arising out of the bill or note transaction, can be made available against an indorsee, even when the bill or note is over-due, at the time of indorsement." The same principle seems to have been admitted, by the supreme court of *Massachusetts*, in the case of *Holland* v. *Makepeace*, 8 *Mass. Rep.* 418. wherein *Sedgwick*, J., in delivering the opinion of the court, remarks : " When it is said, that the assignment of a negotiable security over-due shall not deprive a defendant of any considerations, which might have been favourable to him, if the action had been brought by the original holder, it is meant, that such facts as would show, that the security, at the time of the assignment, had *become invalid* in the hands of the original holder, should equally avail the defendant against the assignee." *Nevins* v. *Townsend*, 6 *Conn. Rep.* 5. *Johnson* v. *Bridge*, 6 *Cowen* 693. *Bridge* v. *Johnson*, in err. 5 *Wend.* 342.

It is true, however, that in the state of *New-York*, and perhaps in some other states, a different *practice* has formerly prevailed ; though it is believed, that a different doctrine has never been deliberately established. A careful examination of the cases alluded to, in the state of *New-York*, will show, that the question now under consideration was not, in those cases, discussed at the bar ; and it may be, therefore, respectfully presumed, that it was not distinctly adjudged, by the court. *Hendricks* v. *Judah*, 1 *Johns. Rep.* 319. *O'Callighan* v. *Sawyer*, 5 *Johns. Rep.* 118. *Bank of Niagara* v. *McCracken*, 18 *Johns. Rep.* 493. *Ford* v. *Stuart*, 19 *Johns. Rep.* 342. In these cases, the principle seems to be assumed, that as between the original parties, a set-off is a *defence to the note*

*New-London,*
July, 1833.
———————
Robinson
*v.*
Lyman.

*itself,* and therefore, must be permitted to be made after the transfer; but on the contrary, the set-off admits the validity of the note, recognizes it as a subsisting debt, and asks only that the plaintiff shall receive in payment debts due from himself, instead of cash.

The judge at the trial, therefore, was justified in refusing to charge the jury, that the sum paid by the defendant to *Patten & Russell*, at the time and under the circumstances before mentioned, could be allowed as a set-off against the note in suit in the hands of the plaintiff, an innocent indorsee. And for the same reasons, a set-off of the sum of 119 dollars, 50 cents, mentioned in a schedule to *Moore's* receipt as being due on the 25th of *June,* 1829, was properly disallowed.

But the judge further instructed the jury, with respect to the two sums of 290 dollars, 58 cents, each, that if they should find the value of the defendant's share in said co-partnership stock was ascertained, and that there was an agreement between the defendant and *Moore,* that the amount thereof should be applied to said note, at the times mentioned in the indenture between them, and which, it is agreed, was long before the indorsement of the note to the plaintiff, that it was their duty to make such application. In this direction also, the judge was justified, by the principles now recognized. That agreement was made when the note remained in the hands of the original holder; it was not in conflict with the rights of any one else; it had reference to the note, and to the manner and means of its payment; and it was, in truth, an equity between the parties, which " attached on the note itself."

The plaintiff, on the trial, for the purpose of shewing, that the note in controversy was indorsed to him at an earlier period than the defendant supposed, claimed, that the legal presumption was, that it was transferred immediately after *Moore* indorsed upon it the payment of 142 dollars, 27 cents, which was on the 10th day of *April,* 1828. This fact furnished no other evidence on the subject, than that the note had not then been assigned to the plaintiff. It certainly could furnish none as to what time thereafter it was so assigned; for neither the payment of that sum, nor its application upon the note, had any connexion with the subsequent act of transfer; and no legal presumption of the nature claimed, could arise from it.

I am of opinion, that the judge was correct, in every position assumed by him; and do not advise a new trial.

The other Judges were of the same opinion. PETERS, J., however, remarked, that he had thought the law otherwise, until he saw the case of *Burrough* v. *Moss* & al. 10 *Barn. & Cres.* 558.

New trial not to be granted.