FAIRCHILD *against* BROWN and others.

*A*, being indebted to *B*, gave him three promissory notes, payable at different times then future, and secured by a mortgage executed by *A* to *B*; and *B*, for a valuable consideration, assigned such notes and mortgage to *C*. Shortly afterwards, and before the notes become due, *C* assigned them, together with the mortgage, to *D*, under an agreement between *C* and *D*, that they should remain the property of *C*, until *D* should remove the incumbrances on a certain farm, which he had agreed to sell to *C*. *D* failed to remove such incumbrances, and his title was foreclosed. Some time afterwards, while the notes were in the possession of *D*, he, being in embarrassed circumstances, fraudulently procured a release to be executed, by *B* to him, of the land mortgaged by *A* to *B*, as security for the notes, with the intent of vesting such security in *D;* and then *D*, with the intention of defrauding *C*, released the same land to *A*, the original mortgagor. With the like fraudulent intention, and with the knowledge of *E*, and by his co-operation, *D* then procured *A* to give five new notes for the amount due on the three first given, which were then taken up ; and to execute a new mortgage to *E* of the land originally mortgaged to *B* ; *A* having no notice that *D* was not the lawful owner of the notes so taken up. The new notes were payable at different future times ; three of them to *E* or bearer, and two without words of negotiability. After one of the notes not negotiable became due, but before either of the other notes became due, *F*, for a valuable and sufficient consideration by him paid, and in good faith, and without notice of any fraud or wrong, purchased of *E* the five last mentioned notes, which *E* assigned to *F*, together with the mortgage attached to them. On a bill in chancery brought by *C* against *F*, for the benefit of the notes and mortgage, it was held, 1. that *A* had a perfect right to substitute the five notes given to *E* for the three original notes given to *B*, then lawfully in the possession of *D*, without notice to *A* that *D* was not the lawful owner of them ; 2. that of the three negotiable notes given to *E*, *F* was both the equitable and the legal owner, having been purchased by him before they were due, in the course of trade, for a valuable consideration paid at the time, with the use of due caution, and without any circumstance raising the slightest suspicion of the legality of the transfer; 3. that as to the two notes not negotiable, one of which was over-due, *C* had not an equitable claim superior or equal to that of *F*; because the fraud committed on *C* was the consequence of his own folly or negligence ; because these notes, as well as the others, were purchased by *F*, not only without notice of any fraud, but without any negligence or circumstances of suspicion attending the purchase; because the equity of *C* arising out of the agreement between him and *D*, was a *secret* equity, against which *F* could not protect himself; and because the rule that the assignee of a chose in action not negotiable and the endorsee of negotiable paper over-due, take such paper subject to all the equities to which it was liable in the hands of the assignor or endorser, was not applicable to *F*—the equity sought to be enforced by *C* not growing out of the notes in question, but a collateral matter, and not being an equity in favour of the original debtor ; consequently, that *C* was not entitled to any decree in his favour.

This was a bill in chancery to obtain the possession of certain promissory notes and the securities attached to them.

Middlesex,
July, 1835.

Fairchild,
v.
Brown.

On the 20th of *February*, 1824, *Guernsey Bates* held and owned three promissory notes, dated *April 8th*, 1823, payable to himself, or order, made by *Luther Freeman* and *Arza Freeman*; one of which notes was for the sum of 300 dollars, and payable on the 1st of *March*, 1824, with interest; another for the same sum, payable on the 1st of *September*, 1824, with interest; and the other was for 1,000 dollars, payable on the 1st of *March*, 1825, with interest. As security for the payment of the two first-mentioned notes, *Bates* then held a mortgage deed of a tract of land, executed by *L.* and *A. Freeman* to him. He had also agreed with *L.* and *A. Freeman*, that he would execute to them a deed with warranty of a certain other piece of land, of which he was then seised in fee, and which he had previously purchased from one *Israel Smith*, who had conveyed it to him, on *L.* and *A. Freeman* paying him the amount due on said two notes for 300 dollars each, and also executing back to him a mortgage of the same piece of land, conditioned for the payment of said note of 1,000 dollars. On the 20th of *February* 1824, in consideration that the plaintiff had, at the special instance and request of *Bates*, conveyed to him in fee simple, and agreed to fulfil said agreement with *L.* and *A. Freeman*, on *Bates's* part, he, *Bates*, agreed with the plaintiff, that he would, and he did, transfer and assign to the plaintiff, at his, the plaintiff's, sole risk, the promissory notes aforesaid, and all his, *Bates's* interest therein, and also all his beneficial interest in said agreement between him and *L.* and *A. Freeman*, and also paid to the plaintiff the sum of 400 dollars in cash, and agreed with the plaintiff that he would pay the sum of 57 dollars, 28 cents, for him, to one *Nancy Lee*, being the balance due on a certain note previously given by the plaintiff to her; and that *Bates* would pay for the plaintiff to *Nehemiah Hubbard*, on a debt which the plaintiff then owed him, the sum of 100 dollars; and that *Bates* would pay to the plaintiff, in one year from the 20th of *February*, 1824, the sum of 297 dollars, 17 cents. It was also then and there agreed between these parties, that said *Bates* should transfer and assign to the plaintiff all the benefit of said mortgage to be executed by *L.* and *A. Freeman* to him; and the plaintiff, at the same time, received from *Bates*, in pursuance of such agreement, said promissory notes, and became the owner thereof, and also received from him a deed of warranty to *L.* and *A. Freeman* of the

Middlesex,
July, 1835.

Fairchild,
v.
Brown.

land purchased from *Israel Smith*, with the intent that such deeds should be delivered, by the plaintiff, to *L.* and *A. Freeman*, in fulfilment of said agreement on the part of *Bates* with them, whenever they should pay said two notes of 300 dollars each, and be ready to execute back to the plaintiff a mortgage of said piece of land, mortgaged for the security of said note of 1000 dollars.

On the 24th of *February*, 1824, an agreement was entered into between the plaintiff and *Joshua West*, of *Lee* in *Massachusetts*, respecting the purchase, by the plaintiff, from him, of a certain farm in *Lee*, called the *Charter* farm, of which *West* was then seised in fee, subject to a mortgage deed thereof, which had been executed by him to certain of his creditors, securing certain debts due from him to them. This agreement was in these words : " Received, *February*, 24th, 1834, of *Henry Fairchild*, three notes against *Luther Freeman* and *Arza Freeman*, to the amount of 1600 dollars, and also a deed of *Bates* to said *Freeman*, and a mortgage which said *Freeman* gave *Bates*, all of which, in part payment, towards the *Charter* farm; and whereas, there is a mortgage on the *Charter* farm; now I agree to clear said mortgage from said premises, otherwise to return the said notes and deed to said *Fairchild*, notwithstanding said *Fairchild* has signed over the notes to me, and they are to remain his property till said farm is free of all incumbrances ; as witness my hand. (signed) *Joshua West*."

*West* then received said three notes from the plaintiff, for the purpose and under the agreement contained in this writing. But neither *West*, nor any other person for him, has ever exonerated the *Charter* farm, or any part thereof, from said mortgage ; and the title of *West* to the *Charter* farm has been foreclosed, by the mortgagee ; and no title thereto, or interest therein, has ever been vested in the plaintiff.

On the 29th of *August*, 1826, after the reception of said notes by *West*, and while they were in his possession, he, being in embarrassed circumstances, fraudulently procured from *Bates* a release and quit-claim of all *Bates's* right, title and interest in and to the piece of land, which had, before the agreement between *Bates* and the plaintiff, been mortgaged, by *Luther Freeman*, to *Bates*, as security for the payment of said two notes of 300 dollars each, with the intent of vesting in *West* the security furnished by the last mentioned mortgage.

On the 31st of *August*, 1826, *West*, with the intention of

defrauding the plaintiff, quit-claimed to *Luther Freeman* the piece of land, which had been previously quit-claimed, by *Bates*, to him. On the same day, *West*, with the like fraudulent intent, with the knowledge and assent of *Sarsus Botsford, Joseph Hawley* and *Aaron Hawley*, of *Lenox*, in *Massachusetts*, partners, under the firm of *Botsford, Hawley & Co.*, and by their co-operation, instrumentality and connivance, procured *L.* and *A. Freeman*, in payment of the promissory notes first-mentioned, to make and deliver their five several promissory notes, for sums, amounting, in the aggregate, to the sum due on said three promissory notes, to *Botsford, Hawley & Co.*; which five notes were as follows, *viz.* one for 350 dollars, payable on the 1st of *May*, 1827, signed by *L. Freeman*; one for 346 dollars, 76 cents, payable jointly and severally by *L.* and *A. Freeman*, in one year from the 1st of *May*, 1827, to *Botsford, Hawley & Co.*, or bearer; another, signed by *L. Freeman*, for 346 dollars, 76 cents, payable in two years from the 1st of *May*, 1827; another signed by *L.* and *A. Freeman*, for 346 dollars, 76 cents, payable to *Botsford, Hawley & Co.*, or bearer, in three years from the 1st of *May*, 1827; and the other, signed by *L.* and *A. Freeman*, for 346 dollars, 76 cents, payable to *Botsford, Hawley & Co.*, or bearer, in four years from the 1st of *May*, 1827. These notes, payable to *Botsford, Hawley & Co.*, or bearer, were, by the laws of *Massachusetts*, negotiable. On the same 31st of *August*, 1826, *West*, with the intent of defrauding the plaintiff, and with the knowledge and assent of *Botsford, Hawley & Co.*, procured *L.* and *A. Freeman* to mortgage to *Botsford, Hawley & Co.* the piece of land so quit-claimed by *West* to *Luther Freeman* for the security of said note of 350 dollars, payable on the 1st of *May*, 1827, and of said note of 346 dollars, 76 cents, payable in two years from the first of *May*, 1827; and with the like fraudulent intent, and with the knowledge and assent of *Botsford, Hawley & Co.*, and by their co-operation, *West* procured *L.* and *A. Freeman* to mortgage to them, *Botsford, Hawley & Co.*, the piece of land, which *Bates* purchased of *Israel Smith*, for the security of said three other notes, which were given by *L.* and *A. Freeman* to *Botsford, Hawley & Co.* These mortgages *Botsford, Hawley & Co.* accepted; *West* having, before the execution of the last-mentioned mortgage, with a like fraudulent intent and with the knowledge and co-operation of

*Botsford, Hawley & Co.*, delivered to *L.* and *A. Freeman* the deed of said land, excuted by *Bates* to *L.* and *A. Freeman*, and by *Bates* delivered to the plaintiff, with the intent that it should be delivered to *L.* and *A. Freeman*, in fulfilment of the agreement on the part of *Bates*, with them, and which deed the plaintiff, at the time of the agreement between him and *West*, delivered to *West*, together with said three promissory notes first above-mentioned, to be kept for the plaintiff until the *Charter* farm should be exonerated from said incumbrances, when *West* was to have the benefit of them, in the same manner and for the same purpose for which the plaintiff received them of *Bates*.

On the 29th of *February*, 1828, *Henry C. Brown*, one of the defendants, for a valuable and sufficient consideration by him paid, in good faith, and without notice of any wrong or fraud concerning said notes, purchased of *Botsford, Hawley & Co.* two promissory notes, one payable to them, or bearer, one year from the first of *May*, 1827, for 346 dollars, 76 cents ; and the other, payable also to them, or bearer, three years from the 1st of *May* 1827, for 346 dollars, 76 cents, both dated *August* 31st, 1826, and signed by *L.* and *A. Freeman*. On the same day, *Botsford, Hawley & Co.*, by their deed of that date, duly executed, assigned said notes, together with a certain mortgage thereto annexed of the land mortgaged by *L.* and *A. Freeman*, to secure the payment of said two notes, and also one other note payable to *Botsford, Hawley & Co.*, or bearer, four years from the 1st of *May* 1827, for the sum of 346 dollars, 76 cents, dated *August* 31st, 1826, signed by *L.* and *A. Freeman*. And on the same day, *Brown*, in good faith, and for a sufficient and valuable consideration, purchased of *Botsford, Hawley & Co.* one other promissory note, payable to them, two years from the 1st of *May*, 1827, for 346 dollars, 76 cents, dated *August* 31st, 1826, signed by *L. Freeman ;* and *Botsford, Hawley & Co.*, for a valuable and sufficient consideration, by their deed of that date, duly executed, assigned said note, together with a certain mortgage to said assignment annexed, of the land mortgaged by *L. Freeman*, to secure the payment of this note, as well as another note, payable to *Botsford, Hawley & Co.*, dated *August* 31st, 1826, signed by *L. Freeman*, payable on the 1st of *May*, 1827, for 350 dollars, which note *Brown*, sometime in the year 1829, purchased of one *Winthrop Laflin*, to whom it had been sold, *Brown*

*Middlesex,*
July, 1835.

Fairchild,
*v.*
Brown.

paying for it the full amount of the note and interest, deducting an endorsement on it of 170 dollars. On the 2d of *July*, 1829, *Brown* purchased said note, payable four years from the first of *May*, 1827, of *Walter Laflin*, paying for it its full amount and value; which note had been transferred to *Laflin*, by *West*. In the purchase of the two last-mentioned notes, *Brown* acted in good faith, and without notice of any fraud. The three notes first above-mentioned, given by *L.* and *A. Freeman* to *Bates*, have never been paid, in any other way than by the execution and delivery, under the circumstances aforesaid, by *L.* and *A. Freeman*, of the five notes above-mentioned, on one of which, was said endorsement of 170 dollars. *Brown* still holds and keeps these five notes, and all the securities therefor, and claims the moneys due thereon. In *May* or *June*, 1827, *L.* and *A. Freeman* had notice from the plaintiff not to pay to any other person than him the sums of money mentioned in and due on the three promissory notes first above-mentioned, and also the sums of money mentioned in and due on the five notes given by *L.* and *A. Freeman*, to *Botsford, Hawley & Co.;* and *L.* and *A. Freeman* have neglected and refused to pay to the plaintiff the sums of money mentioned in and due on all these notes. It did not appear, that at the time the five notes were given by *L.* and *A. Freeman* to *Botsford, Hawley & Co.*, or before that time, *L.* and *A. Freeman*, or either of them, had any notice, that *West* was not the lawful owner of the three notes and deed before-mentioned, which, at the time of giving the five notes before-mentioned to *Botsford, Hawley & Co.*, were taken up, by *L.* and *A. Freeman*.

The case was reserved for the advice of this court.

*Storrs* and *S. Clark*, for the plaintiff, contended, 1. That *West* acquired no *legal* interest in the three notes of *L. & A. Freeman*, by their being placed in his hands, by the plaintiff; but the legal title always remained in the plaintiff. They were negotiable, but were not indorsed, either by *Bates* to the plaintiff, or by the plaintiff to *West*. No indorsement is found, and none is acknowledged in the agreement between the plaintiff and *West*. The expression in the agreement, " has signed over the notes," does not import an indorsement. And if it did, this is not an acknowledgment by the plaintiff, nor binding on him, as between him and *West*. Nor is it an admis-

sion, either by *West* or the plaintiff, as between *West* or the plaintiff and the other defendants or any other persons.

2. That the *equitable* title to these notes, was always in the plaintiff. First, as against the *Freemans*. This depends on the transaction between the plaintiff and *West*. *West* received the notes from the plaintiff, and had them in his possession. This, of itself, was no transfer of any equitable title whatever. It constituted no authority for *West* to receive payment; it did not make *West* agent of the plaintiff; and if it conferred, or would be deemed to confer, any authority on *West* (as between the plaintiff and the *Freemans*) it would be only to receive the money ;—not to treat the notes as his (*West's*) own ; nor to take the payment to himself, by substituted notes. It was, at most, only an authority to receive payment for the plaintiff as his agent. It was incumbent on the *Freemans* to make enquiry, before they treated *West* as owner. They are chargeable with notice ; because there was sufficient to put them on enquiry ; and because the notes were not *indorsed,* which is the only legal mode of transfer.

Secondly, as against *West*. The case shews an intention in *West* to defraud the plaintiff, in procuring the notes to be exchanged for the five notes to *Botsford Hawley & Co. West,* of course, had knowledge of all the circumstances. By his agreement with the plaintiff, he was a *trustee* of the three notes until the incumbrances were removed from the *Charter* farm. A court of equity would enforce that agreement and compel the redelivery of the notes.

Thirdly, as against *Botsford Hawley & Co.* The case shews, that the three notes were given up, in exchange for the other five notes, with a fraudulent intent in *West,* and by " the co-operation, instrumentality, and connivance" of *Botsford Hawley & Co.* They being affected with notice and with acting fraudulently, were *trustees* of the plaintiff equally with *West* himself, and in no better condition. No consideration appears to have been paid, by *Botsford Hawley & Co.* ; and if there had been, it would avail nothing to them, acting with knowledge and fraudulently.

3. That equity will follow the three notes into whose hands soever they come fraudulently, or with notice ; and will follow whatever is substituted for them ; for if *West* or *Botsford Hawley & Co.* are trustees of the three notes for the plaintiff,

they are, of course, trustees of the five taken for them. *Murray* & al. v. *Lylburn* & al. 2 *Johns. Ch. Rep.* 441. *Livingston* v. *Hubbs* & al. 2 *Johns. Ch. Rep.* 512. *Holdridge* v. *Gillespie,* 2 *Johns. Ch. Rep.* 30. 33. and cases cited *ibid. viz.* 1 *Dow* 269. 1 *Ch. Cas.* 191. 1 *Bro. Ch. Cas.* 198. 18 *Ves.* 274. 1 *Ball & Beatty* 467. 2 *Ball & Beatty* 290. 298. *Murray* & al. v. *Ballou* & al. 1 *Johns. Ch. Rep.* 566. *Clute* v. *Robinson,* 2 *Johns. Rep.* 595. Unless therefore, the negotiation of the notes to *Brown* interferes with the plaintiff's rights, the plaintiff has a perfect case in equity, and is entitled to require the three notes to be given up, or the notes substituted, or both, and all securities for them, and to be placed in the same condition as if the three notes had always been in his possession.

4. That the fact of *Brown's* purchasing the five substituted notes, did not deprive the plaintiff of his equitable right. None of these notes were *indorsed* to *Brown.* Two of them, *viz.* the note for 350 dollars and that for 346 dollars, 76 cents, payable in two years from the 1st of *May,* 1827, were *not negotiable ;* and the former of these two notes was *over-due,* when received by *Brown.* As to these notes, *Brown* had no remedy at law, but merely an equitable remedy, which fails, if the notes were obtained by fraud. 2 *Sw. Dig.* 140. 1 *Har. Chan.* 18. The deeds which were put into the hands of *West,* by the plaintiff, and by *West* assigned to *Botsford, Hawley & Co.,* stand upon no higher ground than notes over-due.

Although *Brown* paid for the notes a valuable consideration, still they were received under such circumstances as naturally to excite suspicion. He did not receive them in the ordinary course of business. And if there be any negligence on either side, in this case, it seems imputable rather to *Brown* than to the plaintiff. This is sufficient to turn the scale of equity in the plaintiff's favour.

*Hungerford* and *Barnes* for the defendant *Brown,* (the other defendants not appearing) contended, that from the facts disclosed, the plaintiff had no equitable right to be restored to the condition in which he was originally placed by *Bates.* If he had no such right, things must remain as they are; since no other person calls for relief, or is entitled to it. The question, therefore, depends entirely upon the effect, *in reference to*

*third persons,* which a court of equity is bound to give, under the circumstances of the case, to the agreement between the plaintiff and *West.* The *three* notes were all payable to *Bates,* or *order.* They had, of course, been indorsed by him; and from the terms of the writing given by *West* to the plaintiff, it appears, that these notes were assigned to *West* before they were due. The makers, therefore, having no notice of any fraud, were justified in giving the *five* notes, and the mortgage to secure them; since all the interest of the original mortgaged security had been vested in *West,* by the transfer of the three notes to him.

How, then, does the plaintiff stand before the court? Instead of placing the three notes and the deed in the hands of a third person, with orders to deliver them to *West,* on the performance of certain conditions, he placed them directly in the hands of *West,* without any security but a simple receipt. The plaintiff was thus guilty of gross negligence and inattention to his interest. The injurious effect, of which he complains, resulted from his own folly; and it is a clear principle, that no man is entitled to the aid of a court of equity, when that aid is rendered necessary, by his own fault. The plaintiff having enabled *West* to commit a fraud, assumes the consequences upon himself. 1 *Madd. Chan.* 322.

If the plaintiff and *Brown* are equally innocent, the former ought to suffer, because he reposed confidence in *West,* and trusted to his personal responsibility. The receipt taken by the plaintiff from *West,* constituted a *secret* equity, against which *Brown* could not protect himself; and being a purchaser in good faith, he is not bound by that equity. *Murray* v. *Lylburn,* 2 *Johns. Chan. Rep.* 441. & seq.

As *Brown* is a purchaser, for a valuable consideration, and not affected by any notice of fraud, he is entitled to the property in dispute; for a court of chancery will not take the least step against a purchaser, for a valuable consideration, without notice, not even to perpetuate testimony against him. *Jerrard* v. *Saunders,* 2 *Ves.* jun. 458. 1 *Mad. Chan.* 506. & seq.

*Brown* purchased the five notes *before* they were due. Three of these notes, being negotiable, could not be affected by the fraud, which was practised by *West* in obtaining them. 1 *Mad. Chan.* 153. If the plaintiff, therefore, is entitled to any relief, it can equitably extend only to the two remaining

notes, and such *proportion* of the mortgaged security as these two notes carry with them.

HUNTINGTON J. delivered the opinion of the court.

The plaintiff seeks, by this bill, to obtain the possession of certain promissory notes, and the securities attached to them, now in the hands of the defendant, *Brown*, to which, he alleges, he has an equitable title superior to that of the holder.

We are of opinion, that the case presented by the record, is not one which calls for the interference of the court, to protect any equitable rights of the plaintiff.

Although *L. & A. Freeman* are made parties to the bill, they seek no relief. They do not insist upon any equities, disclosed, by the facts found by the committee, which require the protection of the court, in their behalf, against the claims of the defendant *Brown.* The controversy is wholly between the plaintiff and *Brown :*—and the question submitted to us, is, whether the former has made out a case, which will justify any decree in his favour ?

That a gross fraud has been practised upon the plaintiff, which has deprived him of his property, and caused him to sustain a severe loss, is abundantly evident from the record before us :—And it is as clearly manifest, that neither *Luther* nor *Arza Freeman,* nor *Brown,* were parties or privies to that fraud. No imputation rests upon them, or either of them. They have acted, in all respects, with perfect honesty and good faith. While, therefore, it is cause of regret, that the effects of a fraudulent combination should ever be felt, except by those who perpetrate or are privy to it ; and although a court of equity will lend its aid, so far as justice and established principles will permit, to prevent such consequences from being visited upon the innocent subject of the fraud, it will take care, in its endeavours to do justice to one innocent person, not to do injustice to others equally innocent and equally entitled to its protection.

It is too clear to admit of argument, that the makers of the three notes payable to *Bates,* had a perfect right to substitute for them, the five notes, which were subsequently executed and delivered to *Botsford, Hawley & Co. West* had the lawful possession of them—they had been " signed over" and delivered to him, before they became due—they were negotiable,

—he requested the makers to execute the new notes, and they were accordingly executed and delivered to *Botsford, Hawley & Co.,* " in payment of the three first mentioned notes, which were then taken up," without any notice either to *L.* or *A. Freeman,* that *West* was not the lawful owner of them. The three notes were, therefore, paid in good faith, and delivered to the makers, who have an equitable, as well as legal, right to retain them, as against all the parties to this bill.

If the plaintiff has any equitable claim arising from the facts found in this case, which constitutes a part of the record, it must attach on all, or some of the five notes, made payable to *Botsford, Hawley & Co.* Three of these notes were negotiable; and were purchased by *Brown,* before they became due, " for a sufficient and valuable consideration, paid in good faith, and without notice of any wrong or fraud concerning them." These three notes are dated *August* 31, 1826; signed by *L. & A. Freeman ;* made payable to *Botsford, Hawley & Co.,* or bearer ; each for the sum of 346 dollars, 76 cents; one payable one year from *May* 1, 1827,—and one three years from *May* 1, 1827 ; and were purchased by *Brown,* on the 29th *Feby.,* 1828. The other is payable four years from *May* 1, 1827, and was purchased, by *Brown,* on the 2d of *July,* 1829.

It cannot be seriously contended, that the purchaser, under such considerations, is not the equitable and legal owner of them. It is too well established, by authority, founded on obvious principles of justice and commercial policy, to admit of doubt. These notes were taken, by *Brown,* innocently ;—in the course of trade ;—purchased for a valuable consideration, paid at the time ;—due caution was used ;—there was neither gross neglect, nor any circumstance raising the slightest suspicion of the legality of the transfer ;—they were negotiable—and not due. *Peacock* v. *Rhodes, Doug.* 633. *Collins* v. *Martin,* 1 *Bos. & Pull.* 648. *Grant* v. *Vaughan,* 3 *Burr.* 1516. *Bay* v. *Coddington* & al. 5 *Johns. Ch. Rep.* 54. *S. C.* 20 *Johns. Rep.* 637. 1 *Madd.* 153.

The two other notes are dated *August* 31, 1826 ; are signed by *Luther Freeman,* payable to *Botsford, Hawley & Co.,* two years from *May* 1, 1827, for the sum of 346 dollars, 76 cents ; and were purchased by *Brown, Feby.* 29, 1828 ; the other, signed by *Luther Freeman,* payable on the first of *May* 1829, to *Botsford, Hawley & Co.,* for 350 dollars, and was

purchased, by *Brown*, some time in the year 1829. It appears, that these notes are not negotiable, not being payable to order, or bearer, and one of them was purchased, by *Brown*, when it was over-due. It is insisted, that as to these, the plaintiff is entitled to a decree in his favour. We think otherwise. We are of opinion, that the plaintiff has not any equitable claim to these notes, superior, or equal to that of the defendant *Brown.*

*Middlesex,*
*July, 1835.*
——
Fairchild
*v.*
Brown.

1. The fraud which was committed on the plaintiff, was the consequence of his own folly or negligence. He delivered the three notes payable to *Bates,* and the securities therefor, directly to *West,* instead of a third person, as escrows, to be delivered over, on the performance of certain conditions, without any indemnity, and relying solely upon a receipt, and the personal confidence he reposed in *West.* That confidence was mis-placed. This was his fault, as well as his misfortune. *West,* by means of it, was enabled to commit a fraud, the consequences of which, the plaintiff seeks, through the aid of the court, to visit upon the defendant. A court of equity cannot require the pecuniary loss sustained by the plaintiff, by means of a fraud committed under such circumstances, to be reimbursed, by one who has acted in good faith and without notice of such fraud. It cannot, as against a *bona fide* purchaser for value, give such an effect to the agreement between the plaintiff and *West.* It cannot, under any just and legal principles, hold the defendant, *Brown,* responsible for the unfortunate results of the plaintiff's negligence and inattention. Where one of two innocent persons must suffer, by the fraud of a third, the loss must be borne by him who furnished the means (however honest may have been his intentions) of perpetrating it. 1 *Madd.* 322. *Goodtitle* v. *Morgan* & al. 1 *Term Rep.* 755. *Ryall* v. *Rolle,* 1 *Atk.* 168. *Lickbarrow* v. *Mason,* 2 *Term Rep.* 70. *Good* & al. v. *Harrison,* 5 *Barn. & Ald.* 147. *Gloucester Bank* v. *Salem Bank,* 17 *Mass. Rep.* 38.

2. The notes were purchased by *Brown,* not only without notice of any fraud, but there were no circumstances of suspicion attending the purchase. There was no negligence, on his part, in not making enquiry;—for he had no reason to suppose, that any fraud had been committed upon the plaintiff. He did not know that the plaintiff ever had, or claimed to have, an interest in the notes. It would not, therefore, have occurred to him, to have sought information from that source. If

*Fairchild
v.
Brown.*

enquiry had been made of either of the makers of the notes, it would have been fruitless ;—for they were ignorant of any fraud :—and had he addressed himself to the promisees, they, doubtless, would have informed him, that they were the lawful holders of the notes, and had a perfect right to assign them. No fact existed, within the knowledge of *Brown,* which should have put him on enquiry ; and if there had been, he neither knew, nor had the means of ascertaining, *who* could answer his enquiries. It would require great ingenuity to convince a court, acting upon principles, which give *equitable* jurisdiction, and authorize *equitable* interference, that justice demanded a decree to be passed against a defendant, under such circumstances ;—or a series of precedents too long and too firmly established to be overruled, to justify such a decree. No such conviction has been produced in our minds ;—no such precedents have been furnished us ;—we think none can be found.

3. The equity of the plaintiff, arises out of the agreement made between him and *West,* and is contained in the receipt of *Feby.* 24, 1824. The existence of this agreement was unknown to *Brown,* when he became the purchaser of the notes. He had no reason to suppose any such agreement had been made, and, therefore, the equity arising from it, in favour of the plaintiff, was a *secret* equity, against which *Brown* could not protect himself; and being a purchaser in good faith and for value, and without notice, he is not bound by such an equity. If a third person were permitted to set up a secret equity against the assignor, to defeat or controul the interest of the assignee, no transfer could be made, which would be safe for the assignee. *Redfern* & al. v. *Fernei* & al. 1 *Dow* 50. *Murray* & al. v. *Lylburn* & al. 2 *Johns. Ch. Rep.* 441. To give to a secret agreement, such an effect, would be to tolerate a fraud upon a *bona fide* assignee, and a reproach to the law. *Suydam* v. *Jones,* 10 *Wend.* 180.

It is, however, strongly insisted, that the assignee of a mere chose in action not negotiable, takes it subject to all the equities to which it was liable in the hands of the assignor ; and that the indorsee of negotiable paper, indorsed after it is due, takes it subject to similar equities :—and that as two of the notes purchased by the defendant, were choses in action not assignable at law, and one of them was over-due when it was purchased, they fall within the operation of this rule. The general princi-

ple stated by the plaintiff, is admitted. It is just in itself, and well established by authority. *Bishop* v. *Dexter, 2 Conn. Rep.* 419. *Nevins* v. *Townsend,* 6 *Conn. Rep.* 5. *Robinson* v. *Lyman,* 10 *Conn. Rep.* 30. But we do not concur in the opinion that it is applicable to the present case, for the following reasons, in addition to those we have already mentioned.

First, the equity which is sought to be enforced, in this case, is not one growing out of the notes which are the subject of this controversy. The plaintiff has no interest in, or connexion with them, except as they are connected with notes which once existed, but which have been properly paid by the makers. His name does not appear on these notes, in any form. He is neither maker nor promisee, assignor, nor assignee. His only equity arises from a *collateral* matter, and that is, the private agreement between himself and *West,* contained in the receipt of *Feby.* 24, 1824. This court, in the late cases of *Robinson* v. *Lyman,* 10 *Conn. Rep.* 30., and *Stedman* & al. v. *Jillson* & al. 10 *Conn. Rep.* 55., established the principle, " that the indorsee of an over-due bill or note, is liable to such equities only, as attach *on the bill or note itself,* and not to claims arising out of *collateral* matters." The same doctrine is recognised in *Burrough* v. *Moss* & al. 10 *Barn. & Cress.* 558. and in *Holland* v. *Makepeace,* 8 *Mass. Rep.* 418. These cases are decisive against the claim of the plaintiff.

Secondly, the equity referred to, which attaches to paper not negotiable, or to negotiable paper assigned after it is due, is the equity which exists in favour of the *original debtor,*—not that of a third person against the assignor. The assignee receives it subject to such infirmities, equities, or (as has been said) defences, as existed against it, when it was assigned. But in *whose* favour must these equities exist? We think, in favour of him only, whom the assignee might reasonably suppose, could have such an equity—the debtor—of whom he could enquire, and from whom, by the exercise of ordinary diligence, he could ascertain whether any claims existed, which might defeat what would otherwise be his just rights. We concur in the opinion expressed by Chancellor *Kent,* in the case of *Murray* & al. v. *Lylburn* & al. 2 *Johns. Ch. Rep.* 441., that the equity is one " residing in the original obligor or debtor, and not an equity residing in some third person against the assignor ;" and in the remark of the court in the case of *Norton* v.

*Middlesex,* July, 1835.

Fairchild *v.* Brown.

*Rose,* 2 *Wash. Rep.* 233. that the assignee " takes such paper subject to all the equities of the *obligor ;*" and of *Story,* J., in *Green* v. *Darling* & al. 5 *Mason,* 214 ; where a chose in action " is assignable, it may be admitted that the assignee takes it subject to all the equities existing between the *original parties,* as to that very chose in action so assigned." Similar language is used, by the court, in the cases of *Rosa* v. *Brotherson,* 10 *Wend.* 85. and *Hackley* v. *Sprague, Id.* 113. In the case first named, it is said, the holder " takes it subject to all the equities existing between the *original parties :*" and in the latter case, if the note is transferred after it arrives at maturity, " the holders take it, as he does negotiable paper, subject to any defence which *the maker* has as against the payee."

Upon the whole, we are clearly of opinion, that the claim of the plaintiff has no support, either from principle or authority ; and therefore, that the superior court be advised to dismiss the bill.

The other Judges concurred in this opinion.

Bill to be dismissed.