## SHEFFIELD & Co. v. PARMLEE.

1. When the charge of the Court assumes that the tranfer of a note is *bona fide* for a full consideration, and the evidence is such as to led to this conclusion, if believed by the jury, it is no error.

2. Where the defendants remitted a bill, indorsed by them, to a correspondent house, to whom they were then indebted, with instructions to credit them in account, and that house procured the bill to be discounted, and credited the remitters with the proceeds, and advised them of the facts; these circumstances constitute a sufficient consideration for the indorsement, to enable the correspondent house to maintain an action on the bill, when subsequently paid by them as indorsers, against the remitters.

3. And a holder to whom this house indorsed the bill, after its maturity, and subsequent to its being taken up by them, is not affected by a set off then held by the defendants against their correspondents.

Error to the Circuit Court of Mobile.

Assumpsit by Parmlee, as indorsee of a bill of exchange, drawn by J. C. Dubose, on and accepted by Isaiah Dubose, in favor of Goodman, Miller & Co. who indorsed it to Gayle & Bower, and they to the defendants, who indorsed it to J. R. St, John & Co, and they to the plaintiff. The bill is for the sum of $5,300, dated 18th February, 1837, and payable at Charleston, ninety days after date.

At the trial, upon the issues of non-assumpsit, set off, and payment, the plaintiff read the bill of exchange, indorsed as described, in evidence, as well as evidence of its protest, and notice to the defendants. The plaintiff then proved by a witness, who was a clerk for J. R. St. John & Co. in 1837, that the business carried on by them, was an exchange, or general business, and Sheffield & Co. transacted the same kind of business at Mobile. These two houses drew on each other as occasion required, in carrying on their exchange business, neither house charging the other any commissions. The account of Sheffield & Co. with St. John & Co. during the year 1837 stood as follows:

112

Sheffield & Co. v. Parmlee.

| | | |
|---|---|---|
| On the 1st January a credit of | $20,715 | 55 |
| " 1st February, a debit of | 16,062 | 67 |
| " 1st March, " | 21,293 | 54 |
| " 1st April, " | 15,864 | 64 |
| " 1st May, " | 3,512 | 54 |
| " 1st July, " | 3,292 | 54 |

And this last item yet continues open.

The bill of exchange in suit was remitted by Sheffield & Co. in a letter dated 7th February, post marked 22d February, 1837, addressed to St. John & Co. at Augusta, Georgia, with instructions to credit them in account. The bill was offered by St. John & Co. for discount, to the Georgia Rail Road and Banking Co, who discounted it, and the witness carried the proceeds to the credit of Sheffield & Co's account. After the protest of the bill, for non-payment, and its return to the Banking Company, several demands were made of St. John & Co. for payment, but they could not take it up without making greater sacrifices than they felt disposed to submit to, and the Banking Company threatened a suit against Sheffield & Co. St. John & Co. supposing the drawer and acceptor to be responsible men, and to avoid being sued themselves, and to prevent the Banking Company from going on Sheffield & Co. induced the agent of the plaintiff to take it up. It was supposed, at the time, that Parmlee would have all the names upon the paper bound to him for the payment of it; and it was then considered, that he took it out of bank for the honor of all the parties. This was the understanding of the witness at the time, and it was then believed the acceptor would pay it without a suit. The witness was positive that the confidence of St. John & Co. in the ability of the acceptor, induced them to get Parmlee to take it out of bank, and also, that they then did not anticipate that any of the other parties would have to be proceeded against. The draft never came to the possession of St. John & Co. after they passed it to the bank.

The defendant put in evidence the deposition of the cashier of the Georgia Rail Road and Banking Company, in which it is stated, the bill was discounted by that bank and sent to Charleston for collection. On the 22d September, 1837, it was taken up by D. W. St. John, one of the firm of St. John & Co. On the 14th September, 1837, the bank, by letter, informed Sheffield & Co. it would be constrained to institute a suit, if satisfactory arrange-

ments were not made.  In answer to this, under date of 25th September, Sheffield & Co. expressed their intention to call on the other parties to see what could be done, and to communicate the result.  Sheffield had previously, on the 25th of April, in a letter, signed by him individually, informed the bank of the contemplated suspension upon all drafts purchased for St. John & Co. of New York, New Orleans, Savannah and Charleston, and expressed his intention to endeavor to procure additional security from the drawers and indorsers of such bills.

They also put in the deposition of J. R. St. John, one of the firm of J. R. St. John & Co., who stated the firm of St. John & Co. to consist of himself and D. W. St. John.  They did business as brokers, and had offices in New York and Augusta, Ga. as well as elsewhere.  The office in Augusta was kept by D. W. St. John, and that at New York by the witness.  St. John & Co. at the maturity of the bill in suit, were indebted to Sheffield & Co. in a sum greater than the amount of the bill, and have been ever since until the discharge of the witness under the bankrupt law.  D. W. St. John died in August, 1838.  St. John & Co. had no right to claim payment of the bill sued on from the defendants, for the reason that they were creditors of the firm to a larger sum; and in no event had St. John & Co. a claim on Sheffield & Co. for the payment of more than half of the bill, as it was bought on joint account.

In answer to cross interrogatories this witness states, the houses of St. John & Co. and Sheffield & Co. were not connected in any transactions, except in doing a joint account business in bills of exchange, notes, &c., between the house of St. John & Co. in New York, and Sheffield & Co. at Mobile; but the business which was done between Sheffield & Co. and the offices of St. John & Co. in places other than New York was not done on joint account.  Sheffield & Co. however, would sometimes transmit funds intended for the house of St. John & Co. New York, through their other offices.  They were interested in each others transactions so far, that any profits that might arise upon the joint account transactions, were to be equally divided, as well as the losses, between the two houses.  The houses were not, in point of fact, partners, nor mutually interested in each other's gains or losses, any farther than as before stated.  The witness was unable to state upon what consideration the bill was remit-

cd by Sheffield & Co., to the office of St. John & Co. at Augusta, or what was the state of accounts with that office at the time. Much other testimony was given by this witness, as from information and belief, but this was all stricken out and excluded by the court.

On this state of proof the court charged the jury, that if the defendants remitted the bill to the house of St. John & Co. at Augusta, as agents for collection, and they put the bill in bank, and after it became due, took it out of bank, the plaintiff could not recover, but if the defendants remitted the bill to St. John & Co. their names being indorsed on the back, and St. John & Co. indorsed their names on it to the bank, raised money on it, and after it was due paid it out of their own funds, and then transferred it to the plaintiff, after it became due, then the plaintiff could recover, notwithstanding St. John & Co. were indebted to the defendants in a larger amount, growing out of separate transactions.

The defendants prayed the court to instruct the jury, that if St. John & Co. were indebted to them in a larger amount than the bill, at the time of the transfer to the plaintiff, then the plaintiff could not recover. This was refused, and the defendants excepted, both to the charge given and the refusal to charge as asked. It is assigned that the court erred in both particulars.

DARGAN, for the plaintiff in error, insisted—

1. That the charge given, relieved the jury from weighing the evidence, and deciding the conflict between the witnesses. In fact, the charge is based upon the supposition, that if the facts stated by the defendants' witnesses are true, the plaintiff is yet entitled to recover.

2. Assuming the evidence for the defendant to be true, the plaintiff is not entitled to recover, because every indorsement of a bill is a distinct contract, and when a bill is transferred after its dishonor, the holder takes it in the same plight and condition as his immediate indorser held it. If his immediate indorser can maintain no action, the indorsement imparts no right to the indorsee. [12 John. 159.] St. John & Co. have paid nothing to Sheffield & Co. for their indorsement. The bill was discounted by the bank, St. John & Co. received the proceeds, and afterwards took up the bill, thus standing in relation to Sheffield &

Sheffield & Co. v. Parmlee.

Co. precisely as they stood before; during the whole time they were debtors of Sheffield & Co.

3. Sheffield & Co. having received nothing for their indorsement, it is without consideration, and this is a sufficient defence against a holder, who acquires his title after maturity. If the entry of a credit to Sheffield & Co. is considered a consideration sufficient to enable St. John & Co. to maintain an action, then under the proof as to the state of accounts, the law will deem the indorsement paid as soon as the bill was taken up by St. John & Co. [Chitty on Bills, 436, 8 ed. and notes.]

4. The payment of a bill by the drawer, after its maturity is a discharge of a mere accommodation acceptor. [Story on Bills, 422, § 99.] Now are not Sheffield & Co. as between them and St. John & Co. entitled to be considered as mere accommodation indorsers?

5. The debt due from St. John & Co. to the defendants is a good set off, and is not avoided by the transfer of the bill to the plaintiff. [Bridges v. Johnson, 5 Wend. 343; 5 Pick. 312; Ranger v. Cary, 1 Metc. 369; 4 Green, 92.] If under these decisions, the case of Robinson v. Breedlove, 7 Porter, 541, is to control, then the distinction stated in McDuffie v. Darne, 11 N. H. 244, that it is incumbent on the holder to show that he gave value for the bill, must obtain. Here there is no such proof, and therefore the defendants were entitled to a verdict. [Woodhall v. Holmes, 10 John. 231; Wardell v. Howell, 9 Wend. 170.]

CAMPBELL, contra, argued, that the precise question involved here, was determined in Robinson v. Breedlove, 7 Poter, 541.

The rule declared in that case, is conceded on all sides, to be that of the English courts. [Chitty on Bills, 220; 43 En. Com, L. 61.

The weight of authority in the American courts is to the same effect. [6 N. H. 470; 11 Verm. 70; 6 Cowen, 693; 10 N. H. 366; 10 Conn. 30, 55; 2 Bailey, 298; 1 Hill S. Car, 1; Bank v. Hann, 3 Harrison, N. J. 223.]

The case cited from 5 Pick. 312, is on the construction of the Massachusetts statute of set off, and so considered in 1 Metc. 369. Our statutes have received constructions in Stocking v. Toulmin, 3 S. & P. 35, and Kennedy v. Manship, 1 Ala. Rep.

43, in both of which cases it was held, that the statute gives no right to set off a demand against an intermediate indorser.

As to the *bona fides* of the consideration paid by the plaintiff for the bill, no charge was asked, therefore it is immaterial to consider whether the law is correctly held in the case cited from 11 N. H. 244. The evidence of one of the witnesses was, that the plaintiff took the note out of bank, and of the other, that St. John took it out, but there was no dispute before the jury, that the plaintiff took it either from St. John or the bank for a valuable consideration. The charge assumes that it was transferred to the plaintiff, and if the question at issue was its *bona fides*, a specific charge in explanation should have been requested. The rule of this decision is questionable, as will be seen from Bank v. Hann, 3 Harrison, N. J. 223.

GOLDTHWAITE, J.—1. It is our uniform course to construe the charge of a court in connection with the evidence before it, and the questions raised. In the court below there was a discrepancy in the testimony of two of the witnesses, with respect to the person by whom the bill was taken from the bank ; one of them asserting it was taken up by the plaintiff, at the solicitation of St. John & Co. and the other stating the same act as performed by a member of that firm. It is not easy to perceive what difference there could be in the result, whether the plaintiff furnished St. John & Co. with the money, for them to take up the bill, or whether he took it up with his own money at their solicitation, if he was to hold the bill for his security, as the condition of his advancing the money. However this may be, it is evident the instructions to the jury were given in view of these different statements ; and although the charge assumes a broader ground than is covered by the evidence, yet that is no reason for reversal, if, as given, it is free from legal objection. It assumes, that if the bill was paid by St. John & Co. with their own funds, and afterwards transferred to the plaintiff, he was entitled to recover upon the legal effect of the evidence before the jury. If the question as to the consideration and *bona fides* of the transfer of the bill to the plaintiff, had been expressly raised before the jury, the testimony before them, if believed, was certainly sufficient to warrant the conclusion, that the full sum was paid by the plaintiff. One of the witnesses states the circumstances under which

Sheffield & Co. v. Parmlee.

the plaintiff became the holder of the bill.   St. John & Co. were unable to take it up, without making greater sacriffices than they were willing to do ; but induced the plaintiff to take it up for them. The inference that he paid or lent them the money, is entirely legitimate ; the more especially, as a single question to the witness, if the matter was otherwise, would have removed the difficulty, or elicited the necessary explanation.

If the charge had been asked directly upon the effect of this evidence, the case would then be within the influence of the rule laid down in Carson v. The State Bank, 4 Ala. Rep. 151, and Dearing v. Smith, Ib. 431.   Many more cases to the same effect might be cited if necessary, but these, as settling the rule in this court, are quite sufficient.   This conclusion relieves us from any further examination of the position, that no consideration for the transfer is shown by the evidence; but it is proper to add to what has already been said, that we do not decide the question, how far a defence of this nature could be insisted on without a special, plea, asserting the transfer to be colorable, and insisting on the set off against the indorser.

2. The questions before us are thus narrowed to the consideration passing to Sheffield & Co. for their indorsement of the bill ; and the set off insisted upon by them against St. John & Co. As to the first, it is asserted that no consideration passed, and the proposition is advanced, that when a bill is transferred after its maturity, the holder can maintain no action upon it, when his immediate indorser cannot maintain one.   If this proposition is understood as confined to the original validity of the bill, or of the indorsement, independent of any defence arising out of other transactions, it is unnecessary to controvert it ; because we think that is not the condition of this case.   The bill, indorsed by Sheffield & Co., then debtors to the house in Augusta, was transmitted to St. John & Co. with instructions to credit them in account. This firm indorsed the bill, procured it to be discounted, placed the proceeds to the credit of Sheffield & Co. and advised them of the facts.   Here the money went directly to the use of Sheffield & Co. and there seems to us no grounds whatever for the pretence that the indorsement was without consideration.   If St. John & Co. were now suing on it, and these facts were shown, could their right to recover be gainsayed, independent of the set off?

3. The other, however, is the material question, and it seems to be concluded by other decisions of this court. It will be remembered that we have two distinct classes of paper, the one negotiable, or rather assignable merely, by virtue of our statutes ; and the other negotiable at the common law. Independent of our general statute allowing sets off of mutual debts, that which renders promissory notes assignable, provides that the defendant shall be allowed the benefit of all payments, discounts, and sets off possessed against the same, previous to notice of the assignment. In Stocking v. Toulmin, 3 S. & P. 35, this statute was held not to let in the right of set off against an intermediate holder of a note, whether he derived his title by assignment or otherwise; and the evils supposed likely to arise out of a different construction are fully considered. In Robinson v. Breedlove, 7 Porter, 543, a similar question arose, but in relation to a note payable to bearer, which previous decisions had held to be negotiable without the aid of the statute. We then conformed to what seems to be the unquestioned rule of the English courts ; and, in analogy with the previous decision of Stocking v. Toulmin, held that the fact of becoming the holder of a negotiable instrument, after its maturity, *did not subject the holder to a set off against the payee.* Even if we were now dissatisfied with these decisions, it is too late to correct them, as they have long furnished a guide to the commercial transactions of the State. It is conceived, however, they are well sustained by the weight of authority, as well as by the reasons on which they are based. In England, as before observed, the rule never has been seriously questioned. [Burroughs v. Moss, 10 B. & C. 558.] It obtains in Connecticut, New Hampshire, Vermont, New Jersey, and South Carolina ; Robinson v. Lyman, 10 Conn. 30 ; Stedman v. Jelleund, Ib. 55: Chandler v. Drew, 6 N. H. 469 ; 11 Verm. 70 ; 2 Bailey, 298; 1 Hill S. C. 1 ; Bank v. Hann, 3 Harrison.] In Massachusetts a different practice prevails, (Sargent v. Southgate, 5 Pick. 312,) induced, it is said, by a liberal construction of her statute of set off. [Ranger v. Cary, 1 Metc. 369.] In New York, the earlier decisions seem to have been adverse to the rule adopted by us ; (see the cases cited in Bridges v. Johnson, 5 Wend. 342;) but these were departed from in Johnson v. Bridges, 6 Cowen, 693, which decision was afterwards affirmed on a divided court of errors. [See Bridges v. Johnson, before cited.] The legislature then in-

terposed, and restored by statute the previously recognized rule. It is highly probable the same subject has received the consideration of the courts in other States, but we have confined our examination chiefly to the cases cited, considering this point as controlled by our previous decisions.

The result of our examination of the record, is the affirmance of the judgment.