## SAMUEL SIMPSON *vs.* HENRY F. HALL, JR.

It is a general rule in equity that where a mortgagee purchases the equity of redemption the estate becomes vested as a whole estate in the mortgagee and the mortgage is extinguished and with it the mortgage debt.

The rule however is not inflexible, but depends upon the expressed or implied intention of the mortgagee, and where it is manifestly for his interest that the debt should remain outstanding and continue in his hands as a subsisting security, it will not be extinguished.

But the benefit of the rule and the right to insist on its enforcement belong to those only who are interested in the estate and not to strangers.

Thus, where a mortgage was assigned by *M*, the mortgagee, as security for his own note, and afterwards *M* made a mortgage of his own land to further secure the note, and still later released the equity in the last mentioned land to the party holding his note and the mortgages, it was held that the question whether the mortgage of *M's* land was extinguished and with it his note, was one in which the original mortgagor had no right to intervene.

*M* borrowed of *A* $2,000, which *A* loaned on the parol promise of *H*, made in the presence and at the request of *M*, that he would see the loan repaid if *M* failed to pay it. *M* failing to pay the whole amount, *H* upon the demand of *A* paid the balance. Held that, although *H's* promise could not have been enforced against him by reason of the statute of frauds, yet that he had a right to make the payment and the law would regard it as made at the request of *M*.

A party who takes by endorsement negotiable paper when overdue, takes it subject to all defences and equities which existed and attached to the paper itself.

in the hands of the original holder, but to no defences or equities arising out of collateral transactions.

The rule applicable to paper not negotiable is not so restricted. A party who takes such paper by assignment takes it subject to all defences and equities which existed at the time of the assignment between the payee and the maker, whether attached to the paper or not.

Negotiable paper assigned without the endorsement of the payee stands upon the same footing with paper not negotiable, and in the hands of the assignee is subject to the same rules.

A note was given in July, 1872, on demand, with interest payable annually at seven per cent. The statute then in force forbade the taking of over six per cent. The legislature, in 1872, passed an act which took effect after the note was made, validating all contracts for over six per cent. This act was repealed in 1873. Held that the note, being validated by the act, remained a valid contract for the payment of seven per cent. interest, and was not affected by the repeal of the act.

BILL for a foreclosure, brought to the Superior Court. The facts were found by a committee and the case reserved for advice. The case is fully stated in the opinion.

*T. E. Doolittle* and *H. Stoddard*, for the petitioner.

1. The respondent, after notice of the assignment of his mortgage by Munson to Jones, could not, by any further services rendered Munson or by any other payments made for him, acquire a right to set off a claim for such services or payments against the $3,500, so as to reduce its amount below the sum for which the mortgage was pledged.

2. The fact that Munson afterwards made a further mortgage of his own property to secure the $1,587 note, can not affect the case. Jones had a right to take further security. Besides, it was agreed between him and Munson that the securities which he had taken should all be held as security for all the indebtedness of Jones to him, which is found to have been over $4,200, and more than the value of all the securities. If the Hall mortgage could not be applied to any thing but the $1,587 note, yet the other mortgage, which was wholly a matter between Munson and Jones, could be applied by Jones to the part of Munson's indebtedness not otherwise secured. *Stamford Bank* v. *Benedict,* 15 Conn., 437. The petitioner has of course all the rights of Jones.

3. The conveyance by Munson to the petitioner of his

equity of redemption in the land mortgaged to secure the $1,587 note did not extinguish the mortgage and pay the note. A merger of the two interests never takes place in such a case where it is for the interest of the mortgagee that they be kept distinct. Here the merger clearly was against his interest.

4. The payment of the $1,100 by Hall, and which with the $200 he claims the right to set off against the petitioner's claim, was a voluntary payment, and one therefore which could not be the basis of a claim, if there were no other objection to it. He had agreed only by parol to pay to Allen the $2,000 loaned to Munson, if Munson failed to pay it. This is clearly within the statute of frauds. The promise could not have been enforced against him, and he can not therefore claim to have been compelled to pay it, and he could not make Munson liable by volunteering to pay it.

5. The interest on the $3,500 note should be at the rate of seven per cent. *Seymour* v. *Continental Life Ins. Co.*, 44 Conn., 300.

*J. Sheldon*, with whom was *H. F. Hall, Jr.*, for the respondent.

1. It appears by the record that Munson has been insolvent since January, 1878. The respondent has therefore no means of recovering the $200 and $1,100 which he claims to be due him except by the set-off for which he here contends.

2. The $1,100 payment is not to be regarded as a voluntary one. He had agreed to pay Allen the $2,000 loaned by him to Munson if the latter failed to pay it. This promise was made in Munson's presence and at his request, and Allen made the loan under the inducement of it. Munson paid $1,000 only, leaving this final balance, which the respondent paid upon the demand of Allen. It is true that his promise was by parol, but he was bound in honor by it, and in making the payment will be regarded as doing it at the request of Munson. *Tibbetts* v. *Flanders*, 18 N. Hamp., 284; *Besshears* v. *Rowe*, 46 Misso., 501; *Cotterill* v. *Stevens*, 10 Wis., 422.

3. Munson in June, 1877, gave Jones a mortgage of certain real estate of his own, as additional security for the note

of $1,587.50, which he had given in the place of the original note of $1,500, which had been lost, the value of the property being equal to the amount of the note. In September, 1878, Jones assigned to the petitioner this mortgage and the $1,587 note, and Munson afterwards quitclaimed to the petitioner all his equity of redemption in the mortgaged premises. Thus the petitioner became the owner of the entire estate—the interest conveyed by the mortgage and the equity of redemption. In such a case a merger of the two interests takes place, and the mortgage interest ceases to exist, and with it the mortgage debt is extinguished. 2 Story Eq. Jur., § 1035 *b.*

4. The right to set off the $1,100 payment for which the respondent contends is therefore unaffected by the $1,587 note, and is good against the $3,500 note in the hands of the petitioner, who, as well as his assignor Jones, took it after it was due and dishonored. The case comes within even the rule of the English courts, that claims against a payee of an overdue note that are attached to or grow out of the note transaction, will be set off against that note in the hands of an endorsee receiving it after it is due. *Robinson* v. *Lyman,* 10 Conn., 39; *Burrough* v. *Moss,* 10 Barn. & Cress., 558; *Isberg* v. *Bowden,* 22 Eng. L. & Eq., 551; *Oulds* v. *Harrison,* 28 id., 554. But the more commercial states of this country have adopted a broader rule that is not very well defined or settled as yet. These apply the doctrine of set-off to claims against a payee in favor of a maker of an overdue and dishonored note in the hands of an endorsee in a greater number of cases than those that grow out of or are attached to the original note transaction. *Stedman* v. *Jillson,* 10 Conn., 55; *Bigelow* v. *Lawrence,* 16 id., 207; *Fitch* v. *Gates,* 39 id., 366; *Sargent* v. *Southgate,* 5 Pick., 312; *Ranger* v. *Cary,* 1 Met., 375; *Baxter* v. *Little,* 6 id., 7; *Bond* v. *Fitzpatrick,* 4 Gray, 89; *Wood* v. *Warren,* 19 Maine, 23; *Furman* v. *Haskin,* 2 Caines, 368; *O'Callaghan* v. *Sawyer,* 5 Johns., 118; *Ford* v. *Stuart,* 19 id., 342; *Farrington* v. *Park Bank,* 39 Barb., 645; *Bower* v. *Hastings,* 36 Penn. S. R., 285; *Cromwell* v. *Arrott,* 1 Serg. & R., 180; *Barnet* v. *Offerman,* 7 Watts, 130; *Bates* v. *Kemp,* 12 Iowa, 99. The case of the

$200 is yet stronger, the services for which it was charged having been a continuation of services of the same nature as those which had been rendered before the assignment of the mortgage note, and presumably under the same agreement that they should be applied on the note.

5. If the petitioner is entitled to recover anything on the $3,500 note, the note should draw but six per cent. interest. The note was made July 3, 1872, at which time the taking of more than six per cent. was unlawful. By the act of that year, which took effect after the note was made, such contracts were validated. This act was repealed the next year. The note being on demand, was by law overdue at the end of four months. The act of 1872 validated it as a note upon seven per cent. interest for that time. After that there were only damages and not interest running upon the note. *Fisher* v. *Bidwell*, 27 Conn., 363. The case of *Suffield Eccl. So.* v. *Loomis*, 42 Conn., 570, was decided by a divided court, and the reason of the thing is with the Chief Justice in his dissenting opinion. But if that decision is sustained the present case would yet be governed by the statute of 1877 as to damages after maturity, if there was no contract as to those damages. And there was clearly no express contract, as was the case in *Hubbard* v. *Callaghan*, 42 Conn., 524, and *Seymour* v. *Continental Life Ins. Co.*, 44 Conn., 300.

Hovey, J. This is a bill in equity for the foreclosure of a mortgage of real estate. The facts upon which arise the questions reserved for our advice are embodied in the report of a committee appointed by the Superior Court, and are in substance the following:

On the 3d day of July, 1872, the respondent, being indebted to one John Munson by note of that date in the sum of $3,500 payable on demand, with interest annually at the rate of seven per cent. and taxes, executed and delivered to him a mortgage of real estate of that date to secure its payment. Munson pledged the note and mortgage to Street Jones on the 10th of February, 1876, as collateral security for a note of $1,500 given by him to Jones on that day for money lent;

and the respondent, a few days afterwards, had notice of the pledge. The latter note was lost by Jones some time prior to June 12th, 1877, and thereupon Munson, at the suggestion of the respondent, executed to Jones a new note of that date for the sum of $1,587.50, and a mortgage of real estate of the value of that sum to secure it. The new note was for the principal and interest of the lost note, and was received and accepted by Jones on the 23d of November, 1877, as a substitute for that note. Jones also received from Munson on that day a writing requesting him to hold the note and mortgage of $3,500 as security for the payment of the note of $1,587.50, and also as security for two other notes—one for $2,200, the other for $500—which Jones then held against him. And on the 4th of June, 1878, Munson, by deed of that date, quitclaimed to Jones his interest in the premises covered by the mortgage in suit. On the 13th of September, 1878, Jones, in pursuance of a parol agreement made between him and the petitioner, with the knowledge and assent of Munson, on the 10th of August, 1877, and of an agreement in writing between the same parties executed on the 23d of November following, assigned to the petitioner the note and mortgage of $3,500, and also the note and mortgage of $1,587.50, and the petitioner in consideration thereof paid to Jones or assumed to his satisfaction the indebtedness due to him from Munson. At the same time Munson, by a quit-claim deed, assigned all his interest in these notes and mortgages, and released his equity of redemption in the premises embraced in the smaller mortgage to the petitioner. Both assignments were lodged for record in the office of the town clerk of the town in which the mortgaged premises are situated, on the 16th of September, 1878.

The respondent claimed and the petitioner admitted at the hearing before the committee, that certain payments made by the former to Munson between April 20th, 1872, and June 7th, 1878, amounting in the whole to $1,600, should be applied upon the note of $3,500, and that the same application should be made of the sum of $650 which was due from Munson to the respondent for services and disbursements as an attorney

at the time the note and mortgage were pledged to Jones. The application of those sums left due upon the note on the first day of July, 1879, as the committee finds, the sum of $2,598.33 if interest is to be computed at the rate of seven per cent. per annum, and the sum of $2,352.64 if interest is to be computed at the rate of six per cent. per annum.

The respondent also claimed at the hearing that, upon the facts reported by the committee, there should be applied upon the note of $3,500, by way of set-off, the sum of $200 for services rendered and disbursements made by him as attorney for Munson after the note was pledged by the latter to Jones, and the further sum of $1,100 for money paid by him at the request of Munson to one F. C. Allen on the 5th of October, 1876.

The first question which these facts present is, whether interest upon the note secured by the mortgage in suit should be computed at the rate of seven per cent. per annum. The statute of usury in force when the note was executed, prohibited the taking of interest upon any contract for the loan of money or other property at a higher rate than six per cent. per annum, and declared contracts for a higher rate to be void as to the whole amount of interest taken or reserved. But the legislature, by an act passed in 1872, validated and confirmed all contracts of the latter description and declared that they might be enforced, any law to the contrary notwithstanding. The effect of that act upon the contract contained in the note of the respondent was, to remove from it all taint of usury and illegality, and to make it as binding, to all intents and purposes, as it would have been if the rate of interest established by law at the time it was executed, had been seven per cent. per annum. The act was repealed in 1873, but the obligation which it created and the rights which became vested under it when it went into operation, were unimpaired and unaffected by the repeal. *Suffield Eccl. Society* v. *Loomis*, 42 Conn., 570. Interest should therefore be computed upon the note at the stipulated rate of seven per cent. per annum. *Welch* v. *Wadsworth*, 30 Conn., 149. See also *Beckwith* v. *Trustees of Hartford, Providence & Fishkill*

*R. R. Co.*, 29 Conn., 268; *Adams* v. *Way*, 33 Conn., 419; *Seymour* v. *The Continental Life Ins. Co.*, 44 Conn., 300.

The second question is, whether the conveyance by Munson to the petitioner of his interest in the premises mortgaged for the security of the note of $1,587.50 operated as an extinguishment of the debt. It is a general rule in equity that where a mortgagee purchases of the mortgagor his equity of redemption in the mortgaged premises, the whole estate becomes vested in the party making the purchase, and the mortgage is thereby extinguished, and with it the mortgage debt. The rule, however, is not inflexible, but depends upon the expressed or implied intention of the purchaser; and where it is manifestly for his interest that the debt shall remain outstanding and continue in his hands as a subsisting security, it will not be extinguished. *Findlay* v. *Hosmer*, 2 Conn., 351; *James* v. *Morey*, 2 Cowen, 246; 2 Sto. Eq. Jur., § 1035 *b*. But the benefit of the rule and the right to insist upon its enforcement belong to those only who are interested in the estate, not to strangers. *James* v. *Morey*, 2 Cowen, 246, per Woodworth, J. In the present case, the respondent had no interest in the estate mortgaged by Munson for the security of the note of $1,587.50 at the time the mortgage was given, and has since acquired none. He cannot, therefore, be permitted to question the right of the petitioner and Munson to make such disposition of their respective interests in the estate as they saw fit, or to derive any benefit or advantage from the union of those interests in the petitioner by his purchase of the equity of redemption. But if the respondent was in the situation of a party interested in the mortgaged estate, and we were called upon to determine the question presented, upon the facts reported by the committee and the inferences to be drawn from them, we should undoubtedly hold that the debt, evidenced by the note of $1,587.50, was not extinguished by the petitioner's purchase of Munson's equity of redemption. For it clearly appears that neither of the parties intended that the purchase should operate as a payment of the debt; and it was manifestly for the petitioner's interest that the debt should not be extinguished.

The only question remaining is, whether the respondent has the right to set off the sum of $200 due to him from Munson for services and disbursements, and the further sum of $1,100 for money paid in satisfaction of a debt due from Munson to one F. C. Allen, or any part of those sums, against the balance which will remain due upon the mortgage in suit after satisfying the note of $1,587.50.

In determining this question, it is important to ascertain in the first place whether the claims proposed to be set off are claims which Munson is legally bound to discharge. It was not questioned at the hearing before the committee that the claim of $200 for services and disbursements was a just and valid claim. But it was contended on behalf of the petitioner that the claim of $1,100 was not a valid claim, but was a claim within the provisions of the statute of frauds, and therefore void. In respect to this claim the committee finds that on or about the 26th of February, 1875, Munson, being anxious to borrow $2,000, applied to one F. C. Allen for a loan of the money. The respondent was present as Munson's attorney when the application was made, and to induce Allen to make the loan, said to him in Munson's presence and at his request, that he would see him (Allen) all right, and would pay the money if Munson did not repay it; that Allen thereupon advanced $2,000 to Munson and took his note therefor; that when the note became due Munson paid to Allen $1,000 thereon, but failed to pay the residue. Allen afterwards, on several occasions, requested the respondent to pay the sum remaining unpaid; and on the 5th of October, 1876, the respondent, in compliance with Allen's requests, paid to him the money, amounting to $1,100.

No doubt can be entertained, upon these facts, that the respondent's promise to Allen was within the provisions of the statute of frauds, and created no obligation which Allen could have enforced. But it was a promise which bound the respondent in point of honor, and having been made at the request of Munson and in his presence there was an implied contract on his part that if the respondent paid the money he would repay it. The payment made by the respondent must,

therefore, be taken to have been made by Munson's authority, and having been so made the respondent might have recovered the amount in an action against Munson for money paid, laid out and expended for him and at his request. *Alexander* v. *Vane*, 1 M. & W., 510.

Both claims being valid, and constituting just debts against Munson, is there any obstacle in the way of setting them off against the debt, secured by the mortgage in suit?

When the claim came into existence, Jones held the mortgage and the mortgage debt only as collateral security for the note of $1,587.50. The legal title to the securities and to the balance due upon them was in Munson. If Jones had then commenced a suit at law for the recovery of the mortgage debt in Munson's name, the respondent would have had an indisputable right to set off a sufficient amount of his claims to satisfy that balance. Why should he not have had the same right if the suit had been brought in the name of Jones, or if Jones had sought to enforce payment of his note by a suit for foreclosure? In a suit so brought, if a judgment had been recovered or a decree passed for the whole amount of the mortgage debt and the respondent had paid it, Jones would have been entitled to no more of the money than was necessary for the satisfaction of his debt. The surplus would have belonged to Munson. I can see no reason, therefore, why the respondent should not have had the right to appropriate that surplus by a set-off of an equal amount of his claims. The right is fully recognized by Professor Parsons in his treatise on the law of contracts, (2 Pars. on Cont., 745,) and was enforced by the Supreme Court of Maine in the case of *Moody* v. *Towle*, 5 Greenl., 745. Was the right taken away or affected by the assignment of the securities to the petitioner? It is a rule of the law-merchant, recognized and approved by this court in several cases, that a party who takes, by indorsement, negotiable paper when overdue and dishonored, takes it subject to all defences and equities which existed and attached to the paper itself in the hands of the original holder, but not to defences or equities arising out of collateral transactions. *Robinson* v. *Lyman*, 10 Conn., 30;

*Stedman* v. *Jillson*, id., 55; *Fairchild* v. *Brown*, 11 Conn., 39. The rule applicable to paper not negotiable is not so restricted. A party who takes, by assignment, that description of paper, takes it subject to all defences, equities and infirmities which existed at the time of the assignment between the payee and maker, whether attached to the paper or not. Negotiable paper assigned without the indorsement of the payee or his personal representatives, stands upon the same footing as paper not negotiable, and in the hands of the assignee is subject to the same rules.

The report of the committee in the present case does not state, in terms, whether the note secured by the mortgage in suit was indorsed by Munson or not. It states that the petitioner took from Munson an assignment, by quit-claim deed, of his interest in the note; it states also that he took an assignment of the note from Jones. But it nowhere appears that Munson indorsed the note either to Jones or to the petitioner; and there is no fact disclosed by the committee from which we are at liberty to infer it. The note must, therefore, be considered and treated, for the purposes of this case, as a non-negotiable security, and consequently subject to the right of the defendant to set off against it an amount of his claims equal to the balance remaining unpaid after the note of $1,587.50 shall have been satisfied.

The Superior Court is accordingly advised to pass a decree allowing the respondent to redeem the mortgaged premises, upon his paying to the petitioner, within such time as the court may appoint, the sum due upon the note of $1,587.50, with costs, and to set off so much of his claims against the balance which will then remain due upon the mortgage debt, as will be sufficient to satisfy that balance.

In this opinion the other judges concurred, except CARPENTER, J., who was of the opinion that the respondent should not only be allowed to set off the two sums of $1,100 and $200, but that the value of the land mortgaged by Munson to Jones and quitclaimed by Munson to the petitioner, should be ascertained as of the time of the quitclaim, and deducted from

the $1,587.50 note, and the respondent be required to pay only the balance. He concurred as to all other points.

NOTE.—The name of the Chief Justice is given on page 305 as one of the judges holding the foregoing term. This is an error, but it was not discovered till the sheet had been printed. Judge BEARDSLEY of the Superior Court sat in his place in all the cases down to and including the case of *Maltby's Appeal from Probate*, page 349, except the case of *Healey* v. *City of New Haven*, on page 305. The last mentioned case and all the cases after *Maltby's Appeal from Probate* were heard by only four judges, except that of *Simpson* v. *Hall*, page 417, in which Judge HOVEY of the Superior Court sat.