Beach *v.* Isacs.

---

SAMUEL W. BEACH ET AL. *vs.* HERMAN ISACS ET ALS.

Third Judicial District, Bridgeport, April Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

A quitclaim deed from a mortgagor to a mortgagee will not cause a merger of the mortgage title in the fee, where, from all the circumstances of the case, it is apparent that such result was not intended and that it would be prejudicial to the rights of the mortgagee.

An action to foreclose a mortgage is peculiarly equitable in its nature, and the court may entertain and determine such ques-

Beach *v.* Isacs.

tions as are necessary for the accomplishment of complete justice between the parties.

Section 5195 of the General Statutes, which provides, in effect, for the addition to a mortgage debt of certain advancements made by the mortgagee, is not exclusive in character and does not prohibit the inclusion of other advancements when the universally recognized principles of equity so require.

In determining the advancements which should equitably be added to a mortgage debt, the danger to be avoided is the subjection of a later mortgage or lien to an inequitable burden.

Where, in order to induce the withdrawal of an action to foreclose a first mortgage, the second mortgagee pays a portion of the principal of the first mortgage debt, and the costs incurred by the first mortgagee in bringing the action, and where, upon the burning of the building on the premises, he also pays the expense of an insurance appraisal, these several sums may properly be added to the debt secured by the second mortgage, since the payment of them is as beneficial to all subsequent incumbrancers as to the second mortgagee himself.

Argued April 22d—decided October 18th, 1926.

ACTION to foreclose a mortgage of real estate, brought to the Superior Court in Fairfield County and tried to the court, *Wolfe, J.;* judgment rendered for the plaintiffs, and appeal by the defendant Herman Isacs. *No error.*

The record discloses these facts: On September 23d, 1919, Christianson and Krentzman owned certain premises in this State. On this date, to secure the Lomas and Nettleton Company as trustee, its debt of $10,000, as evidenced by twenty notes of $500 each, payable three years after date, with 6%[1] interest per year, Christianson and Krentzman mortgaged these premises to it. Subsequently, on September 23d, 1919, Christianson and Krentzman mortgaged these premises to the Beaches, the present plaintiffs, to secure their debt to them of $4,100. On November 22d, 1919, they mortgaged these premises to Isacs to secure their debt of $4,400 to him; this mortgage was recorded November 24th, and was subsequent

to those to the Lomas and Nettleton Company, trustee, and to the plaintiffs. On November 23d, 1922, the Lomas and Nettleton Company as trustee commenced an action of foreclosure under its mortgage against Christianson and Krentzman and the Beaches, the present plaintiffs. On December 4th, 1922, the Lomas and Nettleton Company as trustee, agreed with Christianson and Krentzman to withdraw its action and renew the mortgage loan of $10,000, upon condition that they pay the accrued charges of the action, the arrears of interest, taxes, liens for public improvements and the expenses of renewal of the loan, and as a further condition for the renewal that they agree to pay interest upon the mortgage indebtedness at the rate of $6\frac{1}{2}\%$ per annum instead of 6% as theretofore. It was further agreed upon this day between Christianson and Krentzman and the Beaches that the latter would advance to Christianson and Krentzman, in addition to their mortgage indebtedness, $2,492.87, which was to be and was applied to discharge arrears of interest, taxes, expenses of foreclosure and the commission and expenses charged by the Lomas and Nettleton Company upon the renewal. To carry out this agreement it was further agreed that the Lomas and Nettleton Company and the Beaches should release their mortgages and that Christianson and Krentzman should execute to the Lomas and Nettleton Company as trustee, a new mortgage which should be a first lien on these premises to secure the payment of the principal indebtedness of $10,000; and it was further agreed that the equity should be conveyed to the Beaches with an agreement that the title should be held as security for their debt. Pursuant to this agreement the Lomas and Nettleton Company withdrew its action and released the original mortgage; and on this day Christianson

and Krentzman executed and delivered to the Lomas and Nettleton Company their mortgage for $10,000 as security for the payment of twenty notes bearing $6\frac{1}{2}\%$ interest payable to it as trustee as follows: One $500-note on or before one year after date, one $500-note on or before two years after date, one $500-note on or before two and one half years after date, and seventeen $500-notes on or before three years after date. And in further execution of the agreement, the Beaches released their mortgage to Christianson and Krentzman, who conveyed the premises by quitclaim deed to the Beaches as security for the payment of the amount, $6,045, due the Beaches.

On December 4th, 1922, when the Beaches released their mortgage of September 23d, 1919, and took the quitclaim deed of these premises, they had no knowledge of the mortgage to Isacs given on November 22d, 1919. The written memorandum of December 4th, 1922, between the Beaches and Christianson and Krentzman, is as follows: "Whereas, we, the undersigned, have paid certain sums for interest on the Lomas and Nettleton Company mortgage of $10,000.00 on the big Selleck house in Stratford and have paid certain taxes, sewer assessments, foreclosure costs and expenses for the benefit and at the request of the owners of this property, Olof Christianson and Morris Krentzman. And whereas they have conveyed said property to us. Now therefore, we agree to re-convey said property to them or to whomsoever they designate at any time within one year from this date, upon payment to us of the entire amount of money we have paid in the way of charges, obligations of every kind against said property, including the mortgage note now held by us upon said property and the interest on the same." This was sworn to, and underneath the acknowledgment appeared: "Personally appeared

Samuel W. Beach and made oath that the amount due them upon the property referred to above on this day, February 5, 1923, is $6045.00." This was also sworn to and recorded.

Subsequently, by decree of the Superior Court, the Beaches' original mortgage for $4,100 was reinstated and was and continued to be a valid obligation between the parties. To protect their mortgage indebtedness, the Beaches, on December 4th, 1922, paid arrears of interest, insurance, taxes, $500 on the mortgage debt, and the costs in the action of foreclosure, in all $2,230.67. Since December 4th, 1922, the Beaches have been required to pay to protect their interest in their mortgages and for the equal benefit of defendant Isacs, further insurance of $300, interest of $570, taxes of $109.64, and a $500 payment on the debt. On February 4th, 1924, the building on the mortgaged premises was destroyed by fire and there became payable under policies of insurance $12,000. Both the Lomas and Nettleton Company and the Beaches, but not defendant Isacs, were named in these policies. Of this insurance $9,000 was paid the Lomas and Nettleton Company in discharge of the balance of its mortgage indebtedness, and the balance, $3,000, was paid to the Beaches, the plaintiffs in this action, on account of their mortgage indebtedness. To secure payment of the insurance, the plaintiffs paid $43 for an appraisal pursuant to the policy. There is, in addition to the amount due the plaintiffs on their original mortgage, interest due of $614.40. The mortgage debt due the plaintiffs on December 4th, 1922, was $3,600; the additional items made the total debt $7,967.71. Applying to this debt the credit of $3,000, there is left a balance due on the mortgage debt of $4,967.71. On May 24th, 1924, Christianson and Krentzman executed and delivered to plaintiffs a quitclaim deed of these premises

which recites that it was the intention thereof "to convey to the releasees therein any and all equity of redemption in" these premises. It was not the intention by this instrument to cause a merger of plaintiffs' mortgage interest with the ownership of the fee. On December 4th, 1922, the premises were worth between $16,000 and $17,000. The value of the land exclusive of the building destroyed by fire is at present $6,000. The amount of the mortgage claimed by Isacs is $4,400 with interest.

At the trial of this case it was agreed that the printed record in *Lomas and Nettleton Company* v. *Herman Isacs et al.*, reported in volume 101 of the Connecticut Reports, page 614, and particularly the finding made by the judge who tried that cause, for the purpose of appeal to the Supreme Court of Errors, should be received in evidence and the facts found in that record should be found as facts in this case, in so far as they relate to the issues before the court.

*Thomas M. Cullinan,* with whom, on the brief, was *Louis A. Kornblut,* for the appellant (defendant Herman Isacs).

*William H. Comley,* for the appellees (plaintiffs).

CURTIS, J. As appears from the record, this case must be dealt with in the light of the finding and rulings made in the case of *Lomas & Nettleton Co.* v. *Isacs,* 101 Conn. 614, 127 Atl. 6, in which case the parties in the instant case were also parties, and the finding and rulings of the trial court herein were made in accordance with those in that case.

The plaintiffs claim that, under the facts,. they are entitled to recover as the sum due in this foreclosure action as liens superior to the mortgage lien of Herman

Isacs, their mortgage indebtedness of $4,100, with interest and their advancements to the holder of the first mortgage as set forth above of $2,492.87, and $2,230.67 less such sums as they have received in part payment of the mortgage indebtedness due them. The trial court allowed such advancements and found that the balance due them is $4,967.71.

The defendant Isacs claims that the court erred, in whole or in part, in allowing these advancements to be made a part of the sum awarded the plaintiffs in the foreclosure judgment.

It is to be noted that there is no attempt made to correct the finding. All claims made therefore must rest upon the finding as made.

The first ground of error is that the court erred in holding "that the acceptance by the plaintiffs of the quitclaim deed from Christianson and Krentzman on May 20th, 1924, did not constitute a merger of any mortgage title or interest of the plaintiffs in the fee of the land in question." The facts found show that there was no intention to cause a merger and that it would have been prejudicial to the rights of the plaintiffs under the mortgage to have made it. Under these conditions the ruling was clearly in accord with our settled law. *Goodwin* v. *Keney,* 47 Conn. 486, 493; *Simpson* v. *Hall,* 47 Conn. 417, 424.

The second ground of error is that the court erred in adding to the principal of the plaintiffs' mortgage the $2,230.67 advanced by them·on December 4th, 1922, when the first quitclaim of the premises was made to them by Christianson and Krentzman. The court found that the plaintiffs paid this sum to protect their mortgage indebtedness, by paying insurance, taxes, arrears of interest and a payment of $500 on the principal of the first mortgage debt. These payments were obviously for the benefit of Isacs as well as the Beaches.

Unless the plaintiffs were permitted to add these payments to the principal of their mortgage, Isacs would obtain an unconscionable advantage over them. The payment of $500 on the first mortgage debt, which is found to have been paid for the same purpose and result by the Beaches, while not directly covered by the statute is properly found to be a payment which equitably should be deemed a part of the mortgage debt under the finding.

An action of foreclosure is peculiarly an equitable action. In Wiltsie on Mortgage Foreclosure, Vol. 1, § 489, the province of the court in such an action is thus spoken of: "The court may entertain questions which are necessary to be determined in order that complete justice may be done between the parties whose rights in the equity of redemption are to be barred by the decree of foreclosure."

A payment by one of several junior incumbrancers of an instalment due on a prior mortgage would necessarily benefit all junior incumbrancers, and "in order that complete justice may be done between the parties whose rights are to be barred by the decree of foreclosure," such payment by the second mortgagee must equitably be deemed as a part of his mortgage debt upon his foreclosure of his mortgage; the third mortgagee would be amply protected in the privilege to redeem which would be allowed him in the judgment.

The terms of the statute, General Statutes, § 5195, if held to prohibit the application of such principles of equity as are universally applied in determining what advancements by a junior mortgagee may be equitably recovered as a part of the junior mortgage upon its foreclosure, would produce inequitable results, while the purpose of the Act is to further, not to hinder, the doing of equity. See generally, 2 Jones on Mortgages (7th Ed.) p. 683, § 1080.

The danger to be avoided is to prevent a still later mortgage or lien on the same property from being subjected to an inequitable burden.

In the fourth ground of error, the defendant claims, in substance, that the trial court erred in the allowance, as advancements recoverable under the foreclosure of the mortgage, of the necessary payment to the Lomas and Nettleton Company by the Beaches of $42.33 costs in the Company's foreclosure action, and also the payment of $43 for an appraisal necessary in order to secure the insurance of $12,000. These payments were as beneficial to Isacs as to the plaintiffs, and it was entirely equitable that the plaintiffs should make them. They were therefore proper advancements and fairly within the equities of the statute.

There is no error.

In this opinion the other judges concurred.