HENRY HOF, INC., Respondent, *v.* HOWARD V. NOLL et al., Appellants.

First Department, March 15, 1948.

*Joseph M. Proskauer* of counsel (*J. Alvin Van Bergh* with him on the brief; *Proskauer Rose Goetz & Mendelsohn,* attorneys) for Howard V. Noll, Business Properties Inc., and United States Banking Corporation, appellants, and Walter R. Noll, appellant, appearing specially.

*Joseph R. Shaughnessy* of counsel (*George L. Allin* with him on the brief; *Allin, Riggs & Shaughnessy,* attorneys), for respondent.

Dore, J.: In an action for specific performance or damages for claimed breach of a covenant to satisfy a second mortgage on Connecticut property plaintiff purchased from defendant Howard V. Noll, Special Term after trial held as a matter of law that damages for such breach were the full amount of the mortgage and directed judgment in plaintiff's favor in the sum of $52,997.94. The court also imposed in plaintiff's favor a vendor's lien for the amount of the judgment on New York property plaintiff simultaneously had conveyed to defendant Howard V. Noll in exchange for the Connecticut property said defendant sold to plaintiff through Henry Hof, president, herein referred to as " plaintiff " or " purchaser ".

Defendant Noll and his corporation appeal contending that the record shows plaintiff was not actually damaged as it had no equity in the Connecticut property over and above the first mortgage thereon; that the second mortgage had no value, and in fact had been paid.

In 1943, Henry Hof and his wife, both experienced real estate operators, held a 50% stock interest in plaintiff corporation which owned or controlled certain properties on the east block

front of Third Avenue between 18th and 19th Streets, borough of Manhattan, New York. Defendant Howard V. Noll (herein " seller ") owned a nine-acre nonincome producing estate improved with a residence and service building on a lake in Greenwich, Connecticut. On August 7, 1943, the parties agreed to exchange the properties at prices fixed for the purpose of such exchange. Plaintiff agreed to buy Noll's Connecticut property (taking title in Hof's name) for $125,000 subject to a first mortgage of $75,000, the balance, $50,000, in cash. For himself and his corporations Noll agreed to buy plaintiff's New York property for $325,000 subject to a first mortgage of $158,458.31. At the closing, after allowing for credits, liens, mortgages, etc., Noll paid plaintiff for the New York property $77,147.50 in cash which was deposited by plaintiff in a new bank account out of which plaintiff immediately paid Noll $50,746.50.

For tax purposes Noll had given a second mortgage to his infant children, Edna and Hope, in the sum of $43,138.99. In connection with the sale of the Connecticut property, Noll executed a written agreement in part as follows: " It is further understood that there is a second mortgage in the sum of approximately $43,500.00 covering said premises, which Noll undertakes to satisfy of record within a period of thirty (30) days."

By stipulation, signed January 10, 1947, by attorneys for all parties, it was conceded *inter alia* that on August 25, 1943, the infants " received full payment " of the second mortgage totalling $43,138.99; that the moneys were deposited in their bank accounts with other funds, exclusive property of the infants, and thereafter $71,000 was invested on their behalf by Walter R. Noll, the seller's brother, in a mortgage on the 18th Street property; that one of the infants, Edna, became of age on May 7, 1946, and executed releases to all who handled any of her property; that Hope Noll was still an infant; and that " The proceeds received upon the discharge of the said mortgage on the Greenwich property so far as the infant is concerned are still intact ".

The seller caused his infant daughters to execute a satisfaction of the mortgage which was filed in the Greenwich Town Clerk's office; but a title company advised the purchaser that the satisfaction was not proper as a guardian had not been appointed for the infants. Noll refused to have a guardian appointed and this action was instituted.

Because of the plaintiff's default in payment of $2,521.68 taxes, action was instituted in 1944 to foreclose the first mortgage of $75,000 on the Connecticut property. Plaintiff defaulted and was foreclosed, and the first mortgagee acquired title. In the action plaintiff and the infants by guardian duly appointed were parties. The decree provided for redemption by Hof until September 22, 1944, on payment of the first mortgage and accrued interest with $109.11 costs; and upon Hof's failure to redeem, the decree provided for redemption by the infants.

The issue of priority of plaintiff's equity over the infant's discharged second mortgage could have been disposed of in the proceeding to foreclose the first mortgage where the infants as parties were duly represented by a special guardian. In *Beach* v. *Isacs* (105 Conn. 169), it was pointed out that in a foreclosure action the court could entertain questions necessary to be determined in order that complete justice be done between the parties whose rights in the equity of redemption are to be barred by the decree.

Appellants contend that the infants could not have avoided the satisfaction of the second mortgage inasmuch as they received and retained the consideration therefor. But the seller's agreement was to satisfy the second mortgage of record; it was obligatory upon him to procure and file a proper satisfaction; and this he failed to do. The salient issue is whether plaintiff has been actually damaged and if so the amount thereof.

For the purpose of exchange, the value of the Connecticut property was fixed at $125,000, $50,000 over the first mortgage of $75,000. But it does not follow that the property or plaintiff's equity was worth that sum. The only evidence of value in the record is the testimony of one Raynor, a real estate broker of twenty-three years' experience, president of the Greenwich Real Estate Board, who at Hof's request had tried to dispose of the property. Hof instructed Raynor to submit any offers received over the first mortgage; all efforts to sell were unsuccessful. Raynor, as an expert witness for defendants, testified that the value of the Connecticut property between August, 1943, and September, 1944, was not over $75,000, the amount of the first mortgage. The witness adhered to that conclusion when it was called to his attention that the parties for the purpose of exchange had fixed the value at $125,000. This testimony is in effect corroborated by plaintiff's own conduct in defaulting on foreclosure of the first mortgage for nonpayment of several thousand dollars of taxes. Plaintiff offered no proof of value.

On all the facts disclosed, the inference is inescapable that plaintiff's equity in the New York property at the time of the exchange was small. The properties were subject to substantial liens and corporate obligations, incumbered by four mortgages, some of which were in default, and rents had been assigned. Hof himself admitted that he told Dolin, co-owner in plaintiff corporation, that "we had to take the acreage" in Greenwich to effectuate the exchange and that Dolin and his attorney were not very much interested in the Connecticut property but were interested in getting cash. Dolin had a 50% interest in plaintiff corporation and insisted on being paid and he was paid out of the proceeds of the seventy-seven thousand odd dollars given Hof - by Noll at the closing. After Dolin was paid, Hof had $57,500 left of which $50,000 was paid to Noll in accordance with the terms of the exchange and the balance remained with plaintiff corporation, which Hof owned after buying out Dolin's interest for several thousand dollars.

The evidence adduced leads to the inference that plaintiff knew the equity above the first mortgage in the Greenwich property was of no value. Plaintiff in effect abandoned the Connecticut property.

The learned trial court assessed damages for the breach of the covenant to satisfy as of record the second mortgage at the full amount of that mortgage without any finding that the Connecticut property had any equity over the first mortgage and without finding whether plaintiff would have lost the property in any event. The court held that the promise to satisfy the incumbrance was a promise to pay the second mortgage in full and relied on authorities holding that on breach of such covenant by a grantor of land, the amount of the incumbrance, though not discharged, fixes the measure of damages (5 Williston on Contracts [Rev. ed.], § 1408, p. 3923; § 1409, p. 3924; *Cady* v. *Allen*, 22 Barb. 388 [Monroe General Term 1856]; *Rector, etc., of Trinity Church* v. *Higgins*, 48 N. Y. 533; *Wicker* v. *Hoppock*, 6 Wall. [U. S.] 94, 99).

Assuming that failure to have guardians appointed and the mortgage discharged of record was a breach of the covenant, we think it clear on this record that plaintiff was not damaged in the amount of the second mortgage. In *Rector, etc., of Trinity Church* v. *Higgins* (*supra*), the court was careful to point out (p. 539) that the property involved was more valuable than the incumbrance covenanted to be paid; "* * * the premises are worth more than the tax or assessment. No evidence to the contrary appears."

Respondent also relies on *755 Seventh Avenue Corporation* v. *Carroll* (266 N. Y. 157, 163). In that case, however, the court made reference to the absence of any proof that the property had no equity over and above the foreclosed mechanic's lien against which defendant in that case had covenanted. The court said: " Respondent has offered no evidence as to the value of the property at the time when the liens were filed or when the judgment in the lien action was rendered, nor does the sale in the lien action establish the value of the property when the liens were filed or the judgment in the lien action entered. Nor is there evidence of value as to any time between those earlier dates and the date of sale."

Repeatedly plaintiff makes the affirmation that breach of the covenant proximately caused the loss, damaging plaintiff in the full sum of the second mortgage. But proof is lacking. Analysis of the facts fails to show any causal connection between the breach alleged and the damages allowed. The rule stated in the authorities relied on is not an abstraction to be applied as it were *in vacuo*. Whether it applies depends on the state of facts presented. In this case it should be noted that plaintiff's interest was not wiped out by foreclosure of the second mortgage defendant covenanted against. On the contrary it was lost by foreclosure of the first mortgage, which defendant did not covenant against, but which plaintiff had covenanted to assume and pay. It is urged that failure to satisfy the second mortgage caused title to be unmarketable and so caused the loss by preventing resale. The answer is that such issue is not here presented. Plaintiff's bill of particulars expressly states that plaintiff will offer no proof as to damages " by reason of loss or prospective profits on re-sale." In fact there was no prospective purchaser.

In *712 Holding Corporation* v. *Greeley Building Co., Inc.,* (223 App. Div. 96), the seller failed to remove a fire department violation which it agreed to remove in the contract of sale, the purchaser resold but had to deduct $4,000 from the sales price by reason of the violation. This court said: " The true measure of damages is the amount which the plaintiff reasonably lost by reason of the defendant's breach of covenant to remove the notice. That amount here would be the sum it rebated to its vendee, provided the jury found the allowance reasonable. The evidence of the cost of installation would be admissible as bearing upon the reasonableness of the allowance."

In view of the uncontradicted testimony in this record concerning the circumstances surrounding the making of the

second mortgage in question, the agreement to satisfy the incumbrance should be construed not as a promise to pay a sum of money, but a promise to satisfy, the object of which was indemnification for damages suffered by failure to perform. In any event the stipulation before the court states the mortgage was paid and that the moneys of the remaining infant remain " intact ".

On all the facts and circumstances disclosed we cannot escape the conclusion that the value of the land incumbered was relevant in considering whether or not plaintiff was actually damaged. Objectively, realistically, in fact, and in reason, plaintiff did not suffer damages measured by the second mortgage. The record establishes without evidence to the contrary that plaintiff had no equity in the Connecticut property above the first mortgage and allowed it to go by default for that reason and not because the seller had failed to file a satisfaction piece by the infants approved by a court after representation by special guardians.

At most plaintiff would be entitled to nominal damages. In equity judgment awarding nominal damages has been granted when it was necessary to preserve rights and to prevent subsequent possible breaches in the future (*Skinner* v. *Allison*, 54 App. Div. 47, 49; *Lyon* v. *Water Commissioners of Binghamton*, 228 App. Div. 585, 590–591). In the circumstances here disclosed there are no such rights to be protected.

The judgment appealed from should be reversed, without costs and the complaint dismissed, without costs.

PECK, P. J., and COHN, J., concur; GLENNON, and CALLAHAN, JJ., dissent and vote to affirm.

Judgment reversed, without costs and the complaint dismissed, without costs. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.